## HILL *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

No. 108. Argued and submitted January 6, 1893. — Decided May 10, 1893.

A claim by a person asserting title in land under tide water, for damages for the use and occupation thereof by the United States for the erection and maintenance of a light-house, without his consent and without compensation to him, but not showing that the United States have acknowledged any right of property in him as against them, is a case sounding in tort of which the Circuit Court of the United States has no jurisdiction under the act of March 3, 1887, c. 359.

THE case is stated in the opinion.

*Mr. J. Alexander Preston* and *Mr. Alexander Preston,* for plaintiff in error, submitted on their brief.

*Mr. Attorney General* for defendants in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was a suit, brought November 1, 1888, in the Circuit Court of the United States for the District of Maryland, under the act of March 3, 1887, c. 359, by Nicholas S. Hill, a citizen of Maryland, against the United States, for the use and occupation of land for a light-house.

The petition alleged that the plaintiff, since February 14, 1873, had been seized and possessed in fee simple of certain

tracts of land in Baltimore County in the State of Maryland, fronting upon Chesapeake Bay, (as shown upon a plat, and specifically described in a deed of that date to him from Thomas Donaldson, copies of both of which were annexed to the petition,) " with all the riparian rights attached thereto under the law of this State;" that, since his acquisition of said land and rights, " a valuable part thereof has been used and occupied by the United States government " for " the erection and maintenance of a light-house, known generally as the Miller's Island light-house," " without any compensation to your petitioner for such use and occupation, and without the consent thereto of your petitioner or his predecessors in title;" and that " by the use and occupancy by the government as aforesaid of his property he has been prevented from using the same within the limits above mentioned, and from erecting buildings thereupon, and using the same for fishing and gunning purposes." The plaintiff " claims, as damages for the use and occupation of his said property as aforesaid, the sum of $9999 from November 1, 1885, until November 1, 1888, and prays the judgment and decree of this honorable court thereupon on the facts and the law."

The United States pleaded three pleas:

1. A former judgment. The plaintiff replied that there was no such judgment; and the United States joined issue on the replication.

2. " That the land referred to and described in the petition filed in this cause is submerged land and part of the bottom of the Chesapeake Bay, one of the navigable waters of the United States, and that the said defendant, under the law, for the purposes of a light-house, has a paramount right to its use as against the plaintiff or any other person." To this plea the plaintiff demurred.

3. " That the defendant did not commit the wrongs alleged." The plaintiff joined issue on this plea.

On June 22, 1889, the Circuit Court overruled the demurrer to the second plea, and gave judgment thereon for the United States, with costs, and filed a written opinion, which is published in 39 Fed. Rep. 172.

Opinion of the Court.

On June 27, 1889, the Circuit Judge filed findings of facts and conclusions of law, which are copied in the margin.[1]

---

[1] FINDINGS OF FACTS.

1. I find that copies of the plaintiff's petition were, in compliance with the requirements of the act of March 3, 1887, c. 359, duly served on the United States district attorney and the Attorney General of the United States, and said law in all respects complied with.

2. I find that the plaintiff, since February 14, 1873, has been seized and possessed in fee simple of the tract of land described in these proceedings, and known as Miller's Island, and of all the riparian rights attached thereto under the laws of the State of Maryland.

3. I find that no part of the fast land included in the deed of the plaintiff has been used or occupied by the United States; but that a site for the rear range light of Craighill channel, situated about two hundred yards from the shore line of the plaintiff's land, has been occupied and used by the United States; that the said site is submerged land in the Chesapeake Bay, one of the public navigable waters of the United States, and within the ebb and flow of the tide, and in water about two feet deep at low tide.

4. I find that Craighill channel is a channel in Chesapeake Bay, constructed by the United States, and used by ocean vessels in their approach to the port of Baltimore; and that the light-house constructed by the United States in the year 1874 on the site in question is an important and necessary aid to the navigation of said channel.

5. I find that the United States took possession of said site for the purpose of building the light-house in question, without condemnation, or the payment of any compensation to the plaintiff or any other person, in the year 1874.

6. I find that the land of Miller's Island, belonging to the plaintiff, was heretofore used and is chiefly valuable on account of the gunning for geese, swan and ducks, and for the fishing privileges with nets; and that since the erection of the light-house adjoining the shore the value of the land has decreased greatly, and that the plaintiff's testimony tended to show that said decrease is due to the erection of said light-house, and that the island formerly rented for $3000 per annum, but since the erection of the light-house the rent has decreased to $500 per annum.

CONCLUSIONS OF LAW.

That the legal title to the site of the light-house in question is in the State of Maryland, subject to the riparian rights of the plaintiff under the act of 1862, c. 129, of the laws of Maryland.

That under article 1, section 8, of the Constitution of the United States, which provides that Congress shall have the power "to regulate commerce with foreign nations and among the several States and with the Indian tribes," both the title of the State of Maryland and the riparian rights of the plaintiff are subject to the paramount right of the United States to use

The act of March 3, 1887, c. 359, § 7, provides that " it shall be the duty of the court to cause a written opinion to be filed in the cause, setting forth the specific findings by the court of the facts therein, and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. If the suit be in equity or admiralty, the court shall proceed with the same according to the rules of such courts." 24 Stat. 506. But, in the case at bar, the only judgment entered, and upon which this writ of error was sued out, appears to have been given for the United States on the plaintiff's demurrer to the second plea, which presented an issue of law only, upon which the findings of fact can have no possible bearing or effect. It would seem to follow that the findings of facts cannot be taken into consideration by this court upon this record. But this is comparatively unimportant, because those findings do but state in greater detail the facts alleged and admitted by the petition, the second plea and the demurrer to that plea.

The land in question, upon which the United States have built and maintain a light-house, is below low water mark, and under the tide waters of Chesapeake Bay. Both parties assume that by the common law of England, which was the common law of Maryland, the title in land below high water mark of tide waters was in the King, and upon the Declaration of Independence passed to the State of Maryland, and remained in the State after the adoption of the Constitution of the United States, except so far as any right in such land was surrendered to the United States by virtue of the grant to Congress of the power to regulate commerce with foreign nations and among the several States, including as a necessary

---

and occupy the site in question for the purposes of commerce, which includes navigation, without condemnation or compensation, the submerged land forming the site of the light-house being, as to such a use by the United States, public and not private property.

I therefore overrule the demurrer of the plaintiff to the second plea of the United States, and I do give judgment under said plea for the United States, with costs, to include what has been actually incurred for witnesses and for summoning the same, and fees paid to the clerk of the court.

incident the exclusive right to regulate and control the building and maintenance of light-houses for the protection of navigation; and except, also, so far as any right on such lands has been lawfully granted by the State of Maryland to private persons.

By the statute of Maryland of 1862, c. 129, article 54 of the Public General Laws of the State was amended by adding the followings sections:

SEC. 37. "The proprietor of land bounding on any of the navigable waters of this State is hereby declared to be entitled to all accretions to said land by the recession of said water, whether heretofore or hereafter formed or made, by natural causes or otherwise, in like manner and to like extent as such right may or can be claimed by the proprietor of land bounding on water not navigable."

SEC. 38. "The proprietor of land bounding on any of the navigable waters of this State is hereby declared to be entitled to the exclusive right of making improvements into the waters in front of his said land; such improvements, and other accretions as above provided for, shall pass to the successive owners of the land to which they are attached, as incident to their respective estates. But no such improvement shall be so made as to interfere with the navigation of the stream of water into which the said improvement is made."

SEC. 39. "No patent hereafter issued out of the land office shall impair or affect the rights of riparian proprietors, as explained and declared in the two sections next preceding this section, and no patent shall hereafter issue for land covered by navigable waters."

The plaintiff contends that the entire title in the land below high tide, with the right to improve and build upon the same, remained in the State after the adoption of the Constitution; that, by the statute of 1862, the title to such land, at the place in question, or at least the exclusive right of building thereon, was vested in the plaintiff; and that the title or right so acquired by him was his private property, which, by the Fifth Amendment of the Constitution, could not be taken by the United States for the erection and maintenance of a light-house for the public use, without just compensation.

The United States, on the other hand, assert, and the court below has held, that the United States upon the adoption of the Constitution acquired the paramount right to the use of this submerged land for a light-house, without making any compensation therefor; and that any title or right conferred on the plaintiff by the subsequent statute of the State was necessarily subject to this paramount right of the United States.

The question thus presented is of such importance to the United States, as well as to owners of lands bounding on tide waters, that it becomes this court, before expressing any opinion upon it, to inquire whether the courts have jurisdiction to determine the question in this form of proceeding against the United States.

The whole effect of the act of March 3, 1887, c. 359, under which this suit was brought, was to give the Circuit and District Courts of the United States jurisdiction, concurrently with the Court of Claims, of suits to recover damages against the United States, in cases not sounding in tort. *United States* v. *Jones*, 131 U. S. 1, 16, 18.

The United States cannot be sued in their own courts without their consent, and have never permitted themselves to be sued in any court for torts committed in their name by their officers. Nor can the settled distinction, in this respect, between contract and tort, be evaded by framing the claim as upon an implied contract. *Gibbons* v. *United States*, 8 Wall. 269, 274; *Langford* v. *United States*, 101 U. S. 341, 346; *United States* v. *Jones*, above cited.

An action in the nature of assumpsit for the use and occupation of real estate will never lie where there has been no relation of contract between the parties, and where the possession has been acquired and maintained under a different or adverse title, or where it is tortious and makes the defendant a trespasser. *Lloyd* v. *Hough*, 1 How. 153,159 ; *Carpenter* v. *United States*, 17 Wall. 489, 493.

In *Langford* v. *United States*, it was accordingly adjudged that, when an officer of the United States took and held possession of land of a private citizen, under a claim that it be-

longed to the government, the United States could not be charged upon an implied obligation to pay for its use and occupation.

It has since been held that if the United States appropriate to a public use land which they admit to be private property, they may be held, as upon an implied contract, to pay its value to the owner. *United States* v. *Great Falls Manuf. Co.*, 112 U. S. 645, and 124 U. S. 581. It has likewise been held that the United States may be sued in the Court of Claims for the use of a patent for an invention, the plaintiff's right in which they have acknowledged. *Hollister* v. *Benedict Manuf. Co.*, 113 U. S. 59; *United States* v. *Palmer*, 128 U. S. 262. But in each of these cases the title of the plaintiff was admitted, and in none of them was any doubt thrown upon the correctness of the decision in *Langford's case.* See *Schillinger* v. *United States*, 24 C. Cl. 278.

The case at bar is governed by *Langford's case.* It was not alleged in this petition, nor admitted in the plea, that the United States had ever in any way acknowledged any right of property in the plaintiff as against the United States. The plaintiff asserted a title in the land in question, with the exclusive right of building thereon, and claimed damages of the United States for the use and occupation of the land for a light-house. The United States positively and precisely pleaded that the land was submerged under the waters of Chesapeake Bay, one of the navigable waters of the United States, and that the United States, "under the law, for the purpose of a light-house, has a paramount right to its use as against the plaintiff or any other person"; and the plaintiff demurred to this plea. The Circuit Court, instead of rendering judgment for the United States upon the demurrer, should have dismissed the suit for want of jurisdiction.

*Judgment reversed, and case remanded to the Circuit Court with directions to dismiss it for want of jurisdiction.*

MR. JUSTICE JACKSON, not having been a member of the court when this case was argued, took no part in its decision.

MR. JUSTICE SHIRAS dissenting.

When the Fifth Amendment of the Constitution of the United States declares that "private property shall not be taken for public use without just compensation," a compact or contract of the highest degree of obligation is thereby established between the American people of the one part and each and every citizen of the other part. In and by that constitutional provision every citizen agrees that his property may be taken for public use whenever the nation, through its legislative department, demands it; and the United States agree that, when the property of the citizen is so taken, just compensation shall be made.

Whenever a case arises, in which that constitutional provision is invoked, two questions present themselves: first, is the property dealt with the private property of the party claiming it? and, secondly, has it been taken by the United States for public use?

If the property to be affected is not that of the claimant, of course his appeal to the constitutional protection will be vain. But it is equally plain that the question of title is not one to be decided by the party claimant, or by the legislative or executive departments of the United States. That is a judicial question. Accordingly, if in a given case it is either admitted, or proposed to be shown, that the property concerned belongs to a party before a court having jurisdiction to deal with the subject, then the only question that remains is whether such property has been taken by the United States for public use. In such a case the United States cannot, by a plea denying the plaintiff's title, make it the duty of the court to dismiss the plaintiff's suit. Such a denial cannot be treated, in face of the constitutional compact, as an exercise of sovereign power, whereby the right of the citizen to assert his property rights is forbidden, but it merely raises a judicial issue, to be determined by the court.

If the court shall determine that the property in question is the private property of the claimant, then the second question comes up, whether the United States have taken it for public use.

If it shall appear that, in point of fact, the United States. have not taken the plaintiff's property for public use, and that all that the plaintiff has to complain of is that some persons, known or unknown, but claiming to be officers or agents of the United States, have committed a trespass upon his property, and it does not appear that the acts complained of were in pursuance of any law of the United States, or that they have been ratified by the United States, by taking possession of and occupying the property for public use, then the plaintiff's case will fall within the doctrine of *Langford* v. *United States*, 101 U. S. 341, and must be treated as an attempt, under the assumption of an implied contract, to make the government responsible for the unauthorized acts of its officers, those acts being themselves torts.

But if it shall be shown, or be admitted, that the United States, by law, either authorized their agents to appropriate the property of the plaintiff, or have ratified the action of their agents by taking possession of the property and subjecting it to public use, then the constitutional duty of the court is to pronounce judgment for the plaintiff, and to award him just compensation.

These views do not overlook the well-settled doctrine that unless and until Congress shall, by adequate legislation, provide a legal remedy, private rights against the government may be in abeyance. But when Congress, in obedience to the behest of the Constitution, has provided such a remedy, then there is no legal obstacle to the plaintiff's recovery. That Congress has provided such a remedy is seen in the act of March 3, 1887, c. 359, whereby it is enacted that the Court of Claims, and, concurrently, the District and Circuit Courts of the United States, "shall have jurisdiction to hear and determine *all claims founded upon the Constitution of the United States* or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a

court of law, equity, or admiralty if the United States were suable."

This legislation perhaps originated in the regret expressed by this court in *Langford's case*, that " Congress has made no provision by general law for ascertaining and paying this just compensation." That was a suit brought in the Court of Claims, under section 1059 of the Revised Statutes, in which there is no remedy provided for claims founded upon the Constitution of the United States, and was, in the language of the court, the case of "an unequivocal tort."

The later case of *United States* v. *Great Falls Manufacturing Co.*, 112 U. S. 645, 656, is, in some respects, like the present one. It was there held that it was clear "that these property rights have been held and used by the agents of the United States, under the sanction of legislative enactments by Congress; for the appropriation of money specifically for the construction of the dam from the Maryland shore to Conn's Island was, all the circumstances considered, equivalent to an express direction by the legislative and executive branches of the government to take this particular property for the public objects contemplated by the scheme for supplying the capital of the nation with wholesome water. The making of the improvements necessarily involves the taking of the property; and if, for the want of formal proceedings for its condemnation to public use, the claimant was entitled, at the beginning of the work, to have the agents of the government enjoined from prosecuting it until provision was made for securing, in some way, payment of the compensation required by the Constitution — upon which question we express no opinion — there is no sound reason why the claimant might not waive that right, and, electing to regard the action of the government as a taking under its sovereign right of ancient domain, demand just compensation. In that view we are of opinion that the United States, having by their agents, proceeding under the authority of an act of Congress, taken the property of the claimant for public use, are under an obligation imposed by the Constitution to make compensation. The law will imply a promise to make the required compensation

where property, to which the government asserts no title, is taken pursuant to an act of Congress, as private property to be applied for public use. Such an implication being consistent with the constitutional duty of the government, as well as with common justice, the claimant's cause of action is one that arises out of implied contract, within the meaning of the statute which confers jurisdiction upon the Court of Claims of actions founded 'upon any contract, express or implied, with the government of the United States.'"

Having distinguished the case from that of *Langford* the court proceeded to say: "In such a case it is difficult to perceive why the legal obligation of the United States to pay for what was thus taken pursuant to an act of Congress is not quite as strong as it would have been had formal proceedings for condemnation been resorted to for that purpose. If the claimant makes no objection to the particular mode in which the property has been taken, but substantially denies it, by asserting, as is done in the petition in this case, that the government took the property for the public uses designated, we do not perceive that the court is under any duty to make the objection in order to relieve the United States from the obligation to make just compensation."

It will be noticed that this decision, in terms so applicable to the present case, was made before the act of March 3, 1887, in which, for the first time, an express remedy was given for "all claims founded upon the Constitution of the United States," and in "respect to claims for which the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable."

In the present case, although no express proceedings have been instituted by the United States to condemn the property for public use, yet it is admitted in the pleas that the United States have taken possession of it for a public use or purpose, and by various acts of Congress, of which we can take judicial notice, large sums of money have been granted to construct and maintain the light-house on the site in question.

The opinion of the court seeks to withdraw the case from

the operation of the Constitution and the act of 1887, and to bring it within the decision of the *Langford case*, by contending that, because the United States by their pleas deny the plaintiff's right to recover, the acts complained of are thereby shown to have been sheer torts, and therefore expressly exempted from judicial cognizance. I am unable to see the force of this reasoning. The statute having provided that all claims founded upon provisions of the Constitution shall be enforceable, surely a district attorney of the United States cannot by a mere plea, not denying the plaintiff's title to his land, but claiming that the land is legally subject to a servitude in favor of the United States, which exonerates them from making compensation, deprive the plaintiff of his right under the statute to have his claim adjudicated. Can it be possible that after Congress, in recognition of the constitutional provision and of the repeated suggestions of this court, has provided a legal remedy, that a subordinate legal functionary can by a plea, either of matter of fact or of law, defeat the beneficent purpose of Congress, deprive the plaintiff of his remedy, and convert the United States against their will, as expressed in the Constitution and the act of Congress, into a wrongdoer? I cannot accept the proposition that, by a plea putting the plaintiff upon proof of his claim, the United States thereby escape from their constitutional covenant and nullify the statute which provides a remedy.

The question presented by the second plea in the court below is, no doubt, one of difficulty and importance, which, if and when it comes before this court, will demand serious consideration, but that question is waived by the opinion of the court, and any discussion of it in this opinion would be out of place.

I, therefore, have a right to assume that the property of the plaintiff below, though held subject to the right of eminent domain, is entitled to the protection of the Constitution; that there is no kind of private property, whatever may be its nature or origin, that can be taken for public use without just compensation being made.

Hence it follows that the court below erred in overruling

the demurrer to the second plea. I think the judgment of the court below should be reversed, and the cause be remanded to the Circuit Court to proceed therein in exercise of the jurisdiction conferred upon it, in such ample terms, by the act. of March 3, 1887.