BROWN et al. v. UNITED STATES.

(Circuit Court, E. D. Virginia. June 3, 1897.)

EMINENT DOMAIN—RIVER IMPROVEMENTS—TAKING OF SUBMERGED LANDS.

When the government, for the purpose of improving the navigation of a river, takes possession of submerged land which is in the use and possession of a citizen, under a right derived from the state, it takes private property for a public use, and must compensate the owner therefor.

L. L. Lewis, for petitioners.
Wm. H. White, U. S. Atty.

SIMONTON, Circuit Judge.   The petition in this case, as amended, alleges:   That the petitioners, as partners, under their firm name, citizens and residents of Virginia, are the lessees or assignees, under a special statute of that state, of certain ground under water, below low-water mark in York river; that this land, in all 366 acres, is suitable for the planting and propagating of oysters; that they proceeded after the execution of the assignment in 1885, pursuant to the provisions of the act aforesaid, to plant oysters on said ground, at great trouble, labor, and expense.   The petition further states that in 1891, 1892, and 1893 the agents of the United States engaged in the improvement of York river, in aid of foreign and interstate commerce, under various acts of congress in that behalf made and provided, cut a wide and deep trench through the oyster beds of the petitioners, and, besides this, deposited upon them great quantities of mud and other material dredged from the channel of the said river, in the lawful prosecution of said improvement, thus destroying about 30,000 bushels of oysters which petitioners had planted; that besides this, in the further prosecution of this work, the agents of the government, under these acts of congress, constructed a high and substantial wooden dike on the oyster beds of the petitioners, extending their entire length, for the purpose of diverting the current of the river and maintaining the channel, the effect of which was to destroy the value of the property of the petitioners for the purposes for which it was obtained.   The petition further alleges that, in the action stated, no title was asserted by the United States to these oyster beds, or any part thereof, and that, on the contrary, the ownership of the petitioners was acknowledged by those engaged in the prosecution of the work; no proceedings for condemnation of the property were instituted, and no resistance was made by the petitioners; that they recognized this as their way of taking private property for a public use by the government in the exercise of its sovereign right of eminent domain.   The petition prays compensation.   The United States demur to the petition on these grounds:   (1) That the petition in itself shows that petitioners are not entitled to the relief prayed, and that the court cannot grant it.   (2) That, the works described in the petition being in aid of navigation of public waters, the United States are not liable for consequential damages or other injuries resulting therefrom.   (3) That, as a matter of law, plaintiffs can have no private property in the bed of a river described in the petition, inimical to the free exercise by the United States of the right to improve the navigation thereof in the manner described.   The demurrer admits that the petitioners are the owners of these beds under the statute of Virginia, and that they were in actual possession of them, planting oysters thereon.   It also admits that the United States have set up no adverse title to the beds; on the contrary, that they recognized the ownership of the petitioners therein.

There can be no doubt that this court has no jurisdiction in this case, unless the petitioners can establish a contract, express or im-

plied, between them and the United States. If the government had entered and ousted petitioners, asserting title adverse and paramount to them, it would be in the nature of a tort, not enforceable in this court. Gibbons v. U. S., 8 Wall. 269; Langford v. U. S., 101 U. S. 345; Hill v. U. S., 149 U. S. 593, 13 Sup. Ct. 1011; U. S. v. Jones, 131 U. S. 1, 9 Sup. Ct. 669. But, as has been seen, the facts alleged in the petition, and admitted in the demurrer, preclude this idea. Nor is this case one for consequential damage upon property not actually taken by the government, as in Gibson v. U. S., 17 Sup. Ct. 578. The land claimed by the petitioners was actually taken, and itself has been used by the government. We have a case, therefore, of submerged land in the use and possession of the petitioners, which has been taken by the government for the purpose of improving the navigation of the river in whose bed the lands are. Must the government compensate the owner for this taking? Did he hold the lands subject to a servitude in respect to navigation created in favor of the federal government by the constitution? Did this servitude go to the extent claimed in the defense to this action?

The navigable waters of the United States are within their jurisdiction and under their control. Congress can determine what are obstructions to navigation. Pennsylvania v. Wheeling, etc., Bridge Co., 18 How. 421. The maritime jurisdiction of the United States courts extends to all public navigable waters (The Genesee Chief, 12 How. 443); that is to say, all waters which are or can be highways of commerce between the states or with foreign countries (The Montello, 11 Wall. 411; Miller v. Mayor, etc., of New York, 109 U. S. 385, 3 Sup. Ct. 228). But, although the United States have jurisdiction over the navigable streams as highways, the beds of the streams are the property of the state wherein they lie, or of persons to whom the state has granted them. Knight v. Association, 142 U. S. 183, 12 Sup. Ct. 258. As the United States have control over their navigability,—that is to say, to their use as highways,—neither the state nor any grantee of the state can erect in navigable streams structures which may obstruct or impede their use as highways. Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548. And, so long as the land is not used for the erection of structures impeding or obstructing navigation, the rights of the landowner cannot be disturbed. The control of the government over the navigable streams gives it the right to improve or protect the navigation of such streams by deepening the channels or by erecting lighthouses. South Carolina v. Georgia, 93 U. S. 4. And if, in doing this, incidental injury is done to property below or above the works used for improving the channel, this incidental injury gives no claim for compensation against the United States. Gibson v. U. S., supra. But when the government, for the purpose of adding to the navigability of a stream, changes its natural channel, and, in doing so, occupies and assumes exclusive possession of the land of a citizen, it takes private property for a public use, and must compensate the owner for the value of the property thus taken from him. The idea of a servitude is that it must be enjoyed in common with the owner of the servient tenement. The existence of the latter is essential to the co-existence of the former. When

they both become vested in the same person, the dominant tenement becomes extinguished. But when the possessor of the dominant tenement ousts the owner of the servient tenement, and himself assumes exclusive use and enjoyment of the land, which was subject to the servitude, the servitude is extinguished. See Gould, Waters, § 313, and cases cited. The demurrer is overruled.