## TUCKER et al. v. UNITED STATES. DAVENPORT et al. v. SAME. UNDERWOOD v. SAME.

(District Court, D. Rhode Island. July 13, 1922.)

Nos. 1452–1454.

Courts ⬠426—Liability for easements taken or destroyed.

Where the United States, in taking possession of land in invitum for a public use, under authority of an Act of Congress, takes or destroys an easement over such land, appurtenant to lands not taken, there is an implied contract to pay for the same, which will support an action in the District Court under the Tucker Act.

At Law. Actions by Elmer E. Tucker and others by Frank Davenport and others, and by Joseph M. Underwood against the United States. On motions to dismiss for lack of jurisdiction. Denied.

John A. Murphy, Jr., of Newport, R. I., and William W. Moss, of Providence, R. I., for plaintiffs.

Norman S. Case, U. S. Atty., of Providence, R. I., for the United States.

BROWN, District Judge. The petitioners allege ownership of lands in Newport, Rhode Island; that appurtenant to their estates were certain easements and rights in the nature of easements (i. e., a profit à prendre to gather and carry away sand, gravel, and seaweed, and also a right of way) in an adjoining tract of land known as the "Coddington Point land."

They allege that the United States, acting through its proper officers, under the direction and authority of an act of Congress, to wit, chapter 114 of the Public Laws of the United States, 65th Congress, 40 Stat. 704, took possession of the rights, easements, and profits à prendre, the private property of the petitioners, for a public use—i. e., the enlarging of the Naval Training Station at Newport, R. I.—and seek compensation under the provisions of the "Tucker Act," so called. Sections 1, 2, 5, and 6 of the Act of March 3, 1887, 24 Stat. 505 (U. S. Comp. Stats. §§ 1136, 1575, 1576).

The lawful acquisition by the United States of the fee of Coddington Point land is conceded. The title of the United States to the fee of the Coddington Point land is not questioned.

The petitioners assert, in substance, that the fee acquired by the United States was subject to a servitude, and that in the construction of a public work under governmental authority the United States had found it necessary to destroy, and has destroyed, that servitude.

In U. S. v. Welch, 217 U. S. 333, 339, 30 Sup. Ct. 527 (54 L. Ed. 787, 28 L. R. A. [N. S.] 385, 19 Ann. Cas. 680), it was said:

"A private right of way is an easement and is land. We perceive no reason why it should not be held to be acquired by the United States as incident to the fee for which it admits that it must pay. But if it were only destroyed and ended, a destruction for public purposes may as well be a taking as would be an appropriation for the same end. Miller v. Horton, 152 Mass. 540, 547. The same reasoning that allows a recovery for the taking

⬠For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

of land by permanent occupation allows it for a right of way taken in the same manner, and the value of the easement cannot be ascertained without reference to the dominant estate to which it was attached."

Whether we regard the exercise by the United States of the rights of an owner of an unincumbered fee as the taking of the petitioners' rights in the Coddington Point land, or as the destruction of rights appurtenant to lands not taken, and thus as damage to land not taken, does not seem to affect the right to compensation. If an easement is a burden upon an estate and detracts from its value, the United States cannot, by paying that depreciated value, justly acquire full title to an unincumbered estate. If that easement is of value to the owners of the dominant estate, it cannot be destroyed, and the value of the dominant estate be thus depreciated, without compensation to the owners of the dominant estate. See Boston Chamber of Commerce v. Boston, 217 U. S. 189, 30 Sup. Ct. 459, 54 L. Ed. 725.

The petitioners state facts which, if proven, amount to an appropriation of the petitioners' private property for public purposes.

The United States does not deny the acts which would constitute an appropriation, if the petitioners have the easements or rights which they allege. The United States denies the existence of these rights; it denies that the fee of the Coddington Point land was subject to the alleged servitudes. It denies that it has taken the easements, etc., because it denies that they existed.

There is no contention by the United States that it owned the plaintiffs' dominant estates, or had acquired any easements appurtenant thereto, when it entered upon the Coddington Point land. Nor does it deny the doing of those acts which the plaintiffs assert amounted to a taking of plaintiffs' property.

In Tempel v. U. S., 248 U. S. 121, 130, 39 Sup. Ct. 56, 59 (63 L. Ed. 162), it was said:

"The law cannot imply a promise by the government to pay for a right over, or interest in, land, which right or interest the government claimed and claims it possessed before it utilized the same"

—citing the case of Hill v. U. S., 149 U. S. 593, 13 Sup. Ct. 1011, 37 L. Ed. 862, which the United States now claims establishes the law for the present case. But these cases are not in point.

In the present case it appears that, before perfecting a title by purchase, but with the consent of the owners of the fee, and in expectation of thereafter perfecting title, the United States took possession of the Coddington Point land. The continued holding of possession of the land, and the erection of buildings, fences, and other constructions thereon, under governmental authority and for governmental use, resulted in such an appropriation as would, in any event, give a right of action against the government. U. S. v. North American Co., 253 U. S. 330, 334, 40 Sup. Ct. 518, 64 L. Ed. 935.

In Tempel v. U. S., 248 U. S. 121, 131, 39 Sup. Ct. 56, 59 (63 L. Ed. 162), it was said:

"And when the implied promise to pay has once arisen, a later denial by the government (whether at the time of suit or otherwise) of its liability to

make compensation does not destroy the right in contract and convert the act into a tort."

The implied promise to make compensation arising from an act of appropriation of property should be coextensive with the property actually taken, and should arise in favor of the true owners, and of all the owners of what is in fact appropriated.

The United States does not claim that it had title to that property which the petitioners claim to own, nor a right to take such property rights without compensation, if such rights existed. Its denial of plaintiffs' title is not an assertion of its own title to the property, which plaintiffs say has been destroyed. There is a denial of a taking; but this denial does not oust the court of jurisdiction. In many cases the court has taken jurisdiction, though there was a denial that there was a taking. Many of the cases deal with the question, "Was there a taking?"

In United States v. Cress, 243 U. S. 316, 329, par. 3, 37 Sup. Ct. 380, 61 L. Ed. 746, the court took jurisdiction and found the proof of rights of passage sufficient and awarded damages, though it was contended that there was no taking, and no concession of the existence of a right of passage.

In Peabody v. U. S., 231 U. S. 530, 34 Sup. Ct. 159, 58 L. Ed. 351, the sole question was whether there was a taking or appropriation of plaintiff's property.

In a supplemental brief the United States contends that the acts for which it is sought to hold the United States were beyond the authority given its servants and agents. It is doubtful if this belated contention is now permissible under the pleadings. Apparently the acts alleged are pursuant to the purposes of the act, and within the authority of the statute authorizing the enlarging of the Naval Training Station. See Naval Appropriations Act, July 1918, 40 Stat. pt. 1, § II, c. 144, pp. 726, 738.

While the paper title to certain easements set forth by the plaintiffs seems insufficient, title by user is asserted, which prevents a dismissal on the ground that the paper title upon its face is invalid.

I am of the opinion that the petitioners state a case within the jurisdiction of the court.

Motions to dismiss for lack of jurisdiction denied.