**UNITED STATES of America,**
**Appellant,**

v.

**George C. FINN, Charles C. Finn, Peter A. Bancroft, Vineland Elementary School District of Kern County and International Airports, Inc., Appellees.**

**VINELAND ELEMENTARY SCHOOL DISTRICT OF KERN COUNTY,**
**Appellant,**

v.

**UNITED STATES of America, George C. Finn, Charles C. Finn, Peter A. Bancroft and International Airports, Inc., Appellees.**

**No. 14770.**

United States Court of Appeals
Ninth Circuit.

Dec. 27, 1956.

Warren E. Burger, Asst. Atty. Gen., Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Asst. U. S. Atty., Los Angeles, Melvin Richter, Marvin C. Taylor and Richard M. Markus, Attys., Dept. of Justice, Washington, D. C., for appellant the United States.

Roy Gargano, County Counsel, Kit L. Nelson, Asst. County Counsel, Bakersfield, Cal., for appellant Vineland Elementary School Dist.

A. J. Blackman, Los Angeles, Cal., for appellee International Airports, Inc.

George C. Finn and Charles C. Finn in pro. per.

Before MATHEWS, STEPHENS and CHAMBERS, Circuit Judges.

MATHEWS, Circuit Judge.

These appeals are from a judgment of the United States District Court for the Southern District of California in a civil action wherein the United States was plaintiff, and George C. Finn, Charles C. Finn, Peter A. Bancroft, Vineland Elementary School District of Kern County, hereafter called Vineland, and International Airports, Inc., hereafter called International, were defendants.[1]

The action was commenced on July 3, 1952. An amended complaint was filed on September 16, 1952. The amended complaint alleged, in substance, that on June 25, 1946, and at all times thereafter, plaintiff was the owner and entitled to possession of a C–46A Curtiss-Commando airplane bearing United States Army serial number 42–3645; that on June 25, 1946, plaintiff and Vineland entered into a written agreement a copy of which was attached to the amended complaint; that on July 25, 1946, plaintiff transferred possession of the airplane to Vineland, subject to the agreement; that on February 28, 1951, in violation of the agreement, Vineland, acting by and through Bancroft,[2] purportedly sold the airplane to the Finns (George C. Finn and Charles C. Finn); that Bancroft and the Finns induced the violation; that the Finns took possession of the airplane on February 28, 1951, and retained such possession at all times thereafter; that International took possession of the airplane on August 31, 1951, and retained

such possession at all times thereafter; that the value of the airplane was $70,000; that the value of its use was $8,000 a month; that each of the defendants claimed an interest in the airplane adverse to plaintiff; and that none of their claims had any legal validity.

The prayer of the amended complaint was, in substance, that plaintiff have judgment (1) against all the defendants, declaring plaintiff to be the owner and entitled to possession of the airplane, free and clear of all claims and demands of defendants or any of them; (2) against the Finns and International for possession of the airplane or for $70,000 as the value thereof; (3) against the Finns, Bancroft, Vineland and International for damages in the sum of $198,000; and (4) against all the defendants for costs.

On October 21, 1952, International filed an answer which denied all of the above mentioned allegations of the amended complaint and alleged, in substance, that International had (1) a chattel mortgage on the airplane securing an indebtedness of $15,000 owing by the Finns to International and (2) a mechanic's lien on the airplane securing an indebtedness of $14,478.43 owing by the Finns to International.

On February 2, 1953, Bancroft and Vineland filed an answer which denied all of the above mentioned allegations of the amended complaint and alleged, in substance, that Vineland was the owner and entitled to possession of the airplane on June 25, 1946, and at all times thereafter.[3]

On February 16, 1953, the Finns filed an answer, hereafter called their original answer, which denied all of the above mentioned allegations of the amended complaint except the allegation that on June 25, 1946, plaintiff and Vineland entered into the agreement mentioned in the amended complaint, the allegation

1. Another defendant (Seaboard Surety Company) was named, but the action was dismissed as to it before the judgment was entered.

2. Bancroft was Vineland's superintendent.

3. Bancroft and Vineland's answer did not allege that Bancroft had any interest in the airplane.

that on July 25, 1946, plaintiff transferred possession of the airplane to Vineland, subject to the agreement, and the allegation that on February 28, 1951, Vineland, acting by and through Bancroft, purportedly sold the airplane to the Finns. The Finns' original answer alleged, in substance, that Vineland had the right to, and did, on February 28, 1951, sell the airplane to the Finns, and that the Finns had the right to, and did, on that date, purchase the airplane from Vineland.

On September 15, 1954, the Finns filed an answer, hereafter called their amended answer, which contained a counterclaim denominated as such.[4] That part of the Finns' amended answer which preceded their counterclaim [5] stated: "[The Finns], as a first defense, repeat each and every denial contained in [the Finns' original] answer to plaintiff's allegations contained in plaintiff's amended complaint, with the same force and effect as though they were fully set forth here, and [the Finns' original] answer is made a part hereof." That part of the Finns' amended answer which preceded their counterclaim also stated what purported to be "a separate and affirmative defense to plaintiff's allegations contained in plaintiff's amended complaint." [6]

The Finns' counterclaim alleged, in substance, that the Finns were the owners and entitled to possession of the airplane; that plaintiff had illegally seized the airplane, was in possession thereof and was claiming title thereto; and that, as a result of the illegal seizure and detention of the airplane by plaintiff, the Finns had been and would be damaged in

the sum of $15,000 and in the further sum of $8,000 for each month the airplane was withheld from them.

The prayer of the amended answer (including the counterclaim) [7] was, in substance, that the Finns have judgment against plaintiff dismissing the amended complaint; adjudging plaintiff's claims to be invalid and void; quieting title to the airplane in the Finns; awarding the Finns the airplane or $70,000 as the value thereof; awarding the Finns $15,000 if the airplane was returned to them, but, when returned, was not in the same condition as when taken from them; and awarding the Finns $8,000 for each month the airplane was withheld from them.

Plaintiff filed a reply [8] which denied all of the allegations of the Finns' counterclaim except the allegation that plaintiff was in possession of the airplane and was claiming title thereto.

Beginning on October 27, 1954, and ending on November 5, 1954, the issues raised by the amended complaint, International's answer, Bancroft and Vineland's answer, the Finns' original answer and that part of the Finns' amended answer which preceded their counterclaim were tried by the District Court with an advisory jury.[9] On November 5, 1954, after those issues were submitted to the jury, the District Court, sitting without a jury,[10] conducted a trial of the issues raised by the Finns' counterclaim and plaintiff's reply.

Thereafter, on November 5, 1954, the jury returned a special verdict consisting of answers to interrogatories submitted to it. On December 8, 1954, the District

---

4. See Rules 7(a), 12(a) and 13 of the Federal Rules of Civil Procedure, 28 U.S. C.A. The Finns called their amended answer a counterclaim and called their counterclaim a counterclaim. Obviously, their counterclaim was only a part of their amended answer.

5. The Finns' amended answer covered five typewritten pages. Their counterclaim began on page 3 of their amended answer.

6. Actually, that part of the Finns' amend-

ed answer which preceded their counterclaim stated no defense other than that stated in their original answer.

7. In so far as it sought affirmative relief, this was, of course, the prayer of the counterclaim.

8. See Rules 7(a) and 12(a), supra.

9. See Rule 39(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

10. See 28 U.S.C.A. §§ 1346 and 2402.

Court filed an opinion.[11] On February 7, 1955, the District Court filed its findings [12] and conclusions and rendered a judgment which, in effect, ordered, adjudged and decreed that plaintiff take nothing by this action, and that the Finns recover of plaintiff on their counterclaim (1) the airplane or $50,000 as the value thereof, (2) $23,300 for loss of use of the airplane and (3) $15 a day from December 31, 1954, until delivery of the airplane or payment of $50,000 to the Finns.

The judgment was entered on February 8, 1955. Plaintiff moved for a new trial on February 18, 1955. On February 28, 1955, the District Court made an order which, in effect, amended the judgment so as to provide that, if plaintiff elected to surrender the airplane, delivery thereof should be made to International, instead of the Finns. The motion for a new trial was denied on March 31, 1955. Appellant and Vineland appealed from the judgment—appellant on April 13, 1955, and Vineland on May 27, 1955.

**I**

On the grounds and for the reasons stated in its opinion,[13] we agree with the District Court that plaintiff was not the owner of the airplane at any time after July 25, 1946, and was not entitled to any relief in this action.

**II**

The question now to be considered is whether the District Court had jurisdiction of the Finns' counterclaim.

The Finns' counterclaim did not plead a set-off.[14] Instead, it sought affirmative relief. Thus, in and by their counterclaim, the Finns attempted to sue plaintiff (the United States). Since plaintiff cannot be sued without its consent,[15] and since plaintiff's consent to be sued can be given only by Congress,[16] no court has jurisdiction of any suit against plaintiff unless Congress has given plaintiff's consent thereto.[17] As regards plaintiff's immunity from suits to which Congress has not given plaintiff's consent, and as regards jurisdiction of such suits, there is no distinction between counterclaims and original suits.[18]

---

11. United States v. Finn, D.C.S.D.Cal., 127 F.Supp. 158.

12. The District Court's findings consisted, in part, of the jury's answers to interrogatories submitted to it, the District Court having adopted the jury's answers as findings.

13. United States v. Finn, supra.

14. Cf. United States v. Ringgold, 8 Pet. 150, 8 L.Ed. 899; Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894.

15. United States v. McLemore, 4 How. 286, 11 L.Ed. 977; Hill v. United States, 9 How. 386, 13 L.Ed. 185; United States v. Eckford, 6 Wall. 484, 18 L.Ed. 920; Carr v. United States, 98 U.S. 433, 25 L.Ed. 209; Langford v. United States, 101 U.S. 341, 25 L.Ed. 1010; Hill v. United States, 149 U.S. 593, 13 S.Ct. 1011, 37 L.Ed. 862; Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108; Hooe v. United States, 218 U.S. 322, 31 S.Ct. 85, 54 L.Ed. 1055; Illinois Central R. R. Co. v. State Public Utilities Commission, 245 U.S. 493,

38 S.Ct. 170, 62 L.Ed. 425; Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935; Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190; State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. United States Fidelity & Guaranty Co., supra; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; Oswald v. United States, 9 Cir., 96 F.2d 10; United States v. McIntire, 9 Cir., 101 F.2d 650; United States v. Eastman, 9 Cir., 118 F.2d 421; United States v. Merchants Transfer & Storage Co., 9 Cir., 144 F.2d 325; Edwards v. United States, 9 Cir., 163 F.2d 268.

16. See cases cited in footnote 15.

17. See cases cited in footnote 15.

18. United States v. Eckford, supra; Illinois Central R. R. Co. v. State Public Utilities Commission, supra; Nassau Smelting & Refining Works v. United

Congress never gave plaintiff's consent to the Finns' counterclaim.

■ There is no merit in the contention that, by bringing this action, plaintiff gave its consent to the Finns' counterclaim. This action was brought for plaintiff by its attorneys—the United States Attorney for the Southern District of California and two of his assistants. Plaintiff's attorneys were not authorized to give its consent to the Finns' counterclaim,[19] nor did they attempt or pretend to do so. As indicated above, only Congress could have given such consent.[20]

■ Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., cited by the District Court, is not an Act of Congress. It therefore cannot be said to have given plaintiff's consent to the Finns' counterclaim or to have conferred jurisdiction thereof on the District Court.[21]

This was not an admiralty, maritime or prize case. Therefore the admiralty cases [22] cited by the District Court are not in point here.

The Finns' counterclaim did not seek recovery of any internal-revenue tax or any penalty or sum collected under the internal-revenue laws. Therefore 28 U.S.C.A. § 1346(a) (1) cannot be said to have given plaintiff's consent to the Finns' counterclaim or to have conferred jurisdiction thereof on the District Court.

The Finns' counterclaim exceeded $10,000 in amount and was not founded upon the Constitution or any Act of Congress or any regulation of an executive department or any express or implied contract with plaintiff, but was a claim sounding in tort. Therefore 28 U.S.C.A. § 1346(a) (2) cannot be said to have given plaintiff's consent to the Finns' counterclaim or to have conferred jurisdiction thereof on the District Court.

■ The Finns' counterclaim did not allege that the airplane was taken by plaintiff for public use in the exercise of the power of eminent domain.[23] Instead, it alleged that plaintiff illegally seized the airplane, claiming to be the owner thereof. Such a seizure is not a taking of private property for public use in the exercise of the power of eminent domain.[24] Therefore there was and is no basis for holding that an implied contract to pay compensation for the airplane arose from the alleged seizure thereof, and that the Finns' counterclaim was founded upon such a contract.[25] However, since the Finns' counterclaim

States, supra; United States v. United States Fidelity & Guaranty Co., supra. The counterclaims in some of the cases cited in this footnote were called cross-claims. However, in each of them, a defendant or defendants sought affirmative relief against a plaintiff or plaintiffs. Actually, therefore, each of them was a counterclaim.

19. See cases cited in footnote 18.

20. See cases cited in footnote 18.

21. See Rules 13(d) and 82 of the Federal Rules of Civil Procedure.

22. The Siren, 7 Wall. 152, 19 L.Ed. 129; United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313. For an explanation of the Thekla case, see United States v. Shaw, supra. See also United States v. Merchants Transfer & Storage Co., supra.

23. Cf. United States v. Great Falls Mfg.

Co., 112 U.S. 645, 5 S.Ct. 306, 28 L.Ed. 846; United States v. Palmer, 128 U.S. 262, 9 S.Ct. 104, 32 L.Ed. 442; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328, cited by the District Court. Each of the cases cited in this footnote was founded upon an implied contract arising from the taking of private property for public use in the exercise of the power of eminent domain. The Finns' counterclaim was not and did not purport to be so founded.

24. Langford v. United States, supra; Hill v. United States, 149 U.S. 593, 13 S.Ct. 1011, 37 L.Ed. 862; Schillinger v. United States, supra; Hooe v. United States, supra; Tempel v. United States, supra; United States v. North American Transportation & Trading Co., supra.

25. See cases cited in footnote 24.

exceeded $10,000 in amount, 28 U.S.C.A. § 1346(a) (2) could not be said to have given plaintiff's consent thereto or to have conferred jurisdiction thereof on the District Court, even if their counterclaim had been founded upon such a contract.

██ Neither can 28 U.S.C.A. § 1346 (b) be said to have given plaintiff's consent to the Finns' counterclaim or to have conferred jurisdiction thereof on the District Court. This is true for the following reasons:

The Finns' counterclaim was, in part, a claim for property other than money, namely the airplane mentioned above. Section 1346(b) does not relate to claims for property other than money.

The Finns' counterclaim was, in part, a claim for a judgment quieting title to the airplane in the Finns. Section 1346 (b) does not relate to claims for judgments quieting title.

Section 1346(b) relates only to claims against plaintiff for money damages accruing on and after January 1, 1945, for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of plaintiff while acting within the scope of his office or employment under circumstances where plaintiff, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The Finns' counterclaim was not such a claim.

The Finns' counterclaim was, in part, a claim for money damages for injury or loss of property, namely, the airplane, but it did not appear from the Finns'

counterclaim that such injury or loss was caused by any act or omission of any employe.[26] Much less did it appear that such injury or loss was caused by any negligent or wrongful act or omission of any employee of plaintiff while acting within the scope of his office or employment under circumstances where plaintiff, if a private person, would be liable to the Finns in accordance with the law of the place where such act or omission occurred.

We conclude that the District Court had no jurisdiction of the Finns' counterclaim.

### III

As indicated above, Bancroft and Vineland's answer alleged that Vineland owned the airplane; the Finns' answers alleged that the Finns owned the airplane; and International's answer alleged that International had a chattel mortgage and a mechanic's lien on the airplane. However neither Bancroft nor Vineland nor International filed a counterclaim.[27] The Finns filed a counterclaim, but, as held above, the District Court had no jurisdiction thereof. None of the defendants filed a cross-claim.[28] Therefore none of them was entitled to any affirmative relief in this action. In granting such relief to the Finns and International, the District Court erred.

The judgment is modified so as to (1) order, adjudge and decree that plaintiff take nothing by this action; (2) dismiss the Finns' counterclaim for want of jurisdiction; and (3) grant no affirmative relief to any of the defendants.

As thus modified, the judgment is affirmed.

26. No employee was mentioned or referred to in the Finns' counterclaim.

27. The only way to file a counterclaim in a Federal court is to file an answer containing a counterclaim. See Rules 7(a), 12(a) and 13, supra. No such answer

was filed by Bancroft, Vineland or International.

28. The only way to file a cross-claim in a Federal court is to file an answer containing a cross-claim. See Rules 7(a), 12(a) and 13, supra. No such answer was filed by any of the defendants.