## BALTIMORE MAIL S. S. CO. v. UNITED STATES.

### No. 3802.

Circuit Court of Appeals, Fourth Circuit.

April 2, 1935.

Stuart S. Janney and Charles Markell, both of Baltimore, Md. (William A. Grimes, of Baltimore, Md., on the brief), for appellant.

Cornelius Mundy, Sp. Asst. to U. S. Atty., of Baltimore, Md., and Oliver P. M. Brown, Sp. Counsel, United States Shipping Board Bureau, of Washington, D. C. (Bernard J. Flynn, U. S. Atty., of Baltimore, Md., George C. Sweeney, Asst. Atty. Gen., and William S. Ward, Atty., Department of Justice, of Washington, D. C., on the brief) for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

GLENN, District Judge.

This is an appeal from a judgment in favor of the United States in a suit brought by the appellant, Baltimore Mail Steamship Company, to recover alleged excessive interest paid to the United States. The alleged excessive interest was paid on a government loan made through the agency of the United States Shipping Board to the appellant company for the reconstruction of a vessel bought from the United States. The sale of the vessel and the enabling loan were in keeping with the policy of the government to aid American steamship companies, especially when the vessels purchased were to be used in foreign trade. The court below, trying the case without jury, ordered judgment for the defendant, United States of America. The court had in the first instance overruled a demurrer to the declaration which demurrer raised the question of jurisdiction. On the merits, however, the court found in favor of the United States and hence the appeal is here raising questions both as to the jurisdiction and as to the merits.

The suit was brought under the Tucker Act (Act of March 3, 1887, as amended, U. S. C., title 28, § 41, subd. 20, 28 USCA § 41 (20), for the recovery of an alleged overpayment of interest on a loan made to appellant by the United States Shipping Board

under authority of section 11 of the Merchant Marine Act of June 5, 1920, 41 Stat. 993, 46 U. S. C. § 870, as amended by the Act of May 22, 1928, § 301 (a), 45 Stat. 689, 690, 691 (see 46 USCA § 870), for the reconstruction of appellant's vessel, the Steamship City of Baltimore. The claim of overpayment is predicated on the difference between an amount of interest paid by appellant, calculated at the rate of 3 per cent., the rate specified in the agreement of loan between appellant and the Shipping Board, and an amount calculated at $\frac{1}{2}$ of 1 per cent., which appellant contends is the proper rate under the provisions of the act, notwithstanding the 3 per cent. rate specified in the loan agreement. The case involves the one interest payment made on December 5, 1931, for the period from June 28, 1931, to December 14, 1931, in an amount of $17,-333.69. Appellant contends that the amount properly payable was $2,888.62. The amount claimed was reduced to $10,000, the jurisdictional limit of the District Court.

It is important to note that no issue other than the claim for recovery of excess interest is raised by the plaintiff's declaration or by any of the pleadings in the case. The suit is exclusively one for the recovery of excess interest, paid under protest according to the appellant's contention. The plaintiff successfully contended in the District Court that the Tucker Act gave the District Court jurisdiction in this suit. The plaintiff's contentions as to jurisdiction are summed up in the statement that under the Tucker Act the District Court had jurisdiction of the plaintiff's claim which was founded both upon a law of Congress (Merchant Marine Act 1920 amended by Merchant Marine Act 1928) and also upon contracts (the loan agreement, first mortgage, and notes evidencing the relations between the parties).

The section of the Merchant Marine Act which deals with the question of interest is as follows: "(d) All such loans shall bear interest at rates as follows, payable not less frequently than annually: During any period in which the vessel is operated exclusively in coastwise trade, or is inactive, the rate of interest shall be as fixed by the board, but not less than $5\frac{1}{4}$ per centum per annum. During any period in which the vessel is operated in foreign trade the rate shall be the lowest rate of yield (to the nearest one-eighth of 1 per centum) of any Government obligation bearing a date of issue subsequent to April 6, 1917 (except postal-savings bonds), and outstanding at the time

the loan is made by the board, as certified by the Secretary of the Treasury to the board upon its request. The board may prescribe rules for determining the amount of interest payable under the provisions of this paragraph." Act May 22, 1928, c. 675, § 301 (a), 45 Stat. 690.

In the loan agreement covering the sale of the particular vessel involved in this suit, the Steadfast (now the City of Baltimore), the Shipping Board over the plaintiff's protest inserted the following paragraph: "Sec. 19. The permanent notes shall be of equal amounts and shall bear interest payable semi-annually as follows: During any period in which the vessel is operated exclusively in coastwise trade or is inactive, the rate of interest shall be $5\frac{1}{4}\%$; during any period in which the vessel is operated in foreign trade, the rate *shall be the minimum rate of three (3) per centum per annum or such higher rate as shall be fixed by the Board at the time of the completion of the work on the vessel and redelivery thereof by the Builder to the Owner under the provisions of the Merchant Marine Act, 1928.* The Board may prescribe rules for determining the amount of interest payable under the provisions of this paragraph." (Italics supplied.) (R. 27.)

The 3 per centum per annum rate as contained in this section 19, the loan agreement, was then inserted in the notes executed by the appellant. The permanent notes and the preferred mortgage were dated June 15, 1931, and contained provisions fixing the rate of interest at 3 per centum. The contention was made by the appellant during all the preliminary negotiations that the rate of interest on the loan for the time that the vessel was engaged in foreign trade should be fixed according to the formula of lowest rate of yield as understood by the Treasury Department, i. e. the lowest rate of yield received by a purchaser of government obligations on his investment, irrespective of how short a time such obligations may have to run at the time of their purchase.

The contest on trial centered chiefly around the construction of the section of the statute fixing the rate of interest to be charged on the long term loan. For many reasons, the enumeration and discussion of which would carry us over many pages, we think that the learned District Judge came to the correct conclusions as to the construction of the controlling section of the statute. His findings of fact, conclusions of law, and opinion present fully his views in this re-

gard. His stated views thereabout find strong support in reason and authority. Cogent reasoning and well-accepted principles of statutory construction abundantly sustain the correctness of his decision. In addition to this, the question would arise, if we were at liberty to consider the case upon the merits, whether the plaintiff is not estopped by the terms of its contract from questioning the correctness of the interest paid by it. While the statute prescribes the rate at which loans shall be made by the Shipping Board, the fact remains that the plaintiff, as a condition of obtaining the loan, agreed to pay the rate of interest specified in its contract; and the question arises whether it can accept the loan and repudiate the conditions upon which it was made.

■ We cannot pass upon any of these questions affecting the merits, however, for the reason that in our opinion there was no jurisdiction in the court below to entertain the suit under the Tucker Act or any other statute. It is not a suit to enforce a liability created by statute, nor is it a suit upon a contract either express or implied in fact. It is a suit to recover interest paid the United States on the theory that such interest was unlawfully exacted of plaintiff; and proceeds solely upon the theory that there is a duty imposed by law to repay the monies thus wrongfully collected. In other words, recovery is sought upon the theory of quasi contract, or contract implied in law. The Merchant Marine Act does not say a word anywhere about the duty of the government to repay any interest collected at an excess rate. Neither statute nor term of the express contracts gives basis or support to the plaintiff's right to recover this interest. The legal fiction of a contract implied in law is absolutely essential to and constitutes the only basis of plaintiff's claim to recover in this suit.

■ This question of jurisdiction must always be viewed in light of the well-accepted premise that a suit will not lie against the United States unless clearly authorized by statute. It is well understood that the Tucker Act has been called a great remedial statute and that it should not be looked upon with an evil eye. The late Justice Holmes has pointed out that courts should give a broad interpretation to this "great remedial statute" and that it is not to be "read with an adverse eye." But, at the same time, when we strip the present suit at law of all background and get down to the real essence of the cause of action stated, we think that

it is a suit against the United States on a contract implied in law. See discussion of this matter, pages 3, 4, and 5, vol. 1, Williston on Contract. See, also, Federal Law of Contracts, p. 311, vol. 2, § 493. Critics have suggested that the distinction between a contract implied in fact and a contract implied in law is artificial, metaphysical, and without substance. However, we find that the Supreme Court in dealing with the very question of jurisdiction in the District Court has recognized the distinction, and it is well settled that the Tucker Act, while giving jurisdiction to the District Court over a suit against the government based on a contract implied in fact, does not give jurisdiction over a suit based on a contract implied in law. Alabama v. United States, 282 U. S. 502, 51 S. Ct. 225, 75 L. Ed. 492; Sutton v. United States, 256 U. S. 575, 41 S. Ct. 563, 65 L. Ed. 1099, 19 A. L. R. 403; Baltimore & Ohio R. R. Co. v. United States, 261 U. S. 592, 597, 43 S. Ct. 425, 67 L. Ed. 816; United States v. Minnesota Mutual Investment Co., 271 U. S. 212, 217, 46 S. Ct. 501, 70 L. Ed. 911; Merritt v. United States, 267 U. S. 338, 45 S. Ct. 278, 69 L. Ed. 643.

The learned District Judge said that the suit was founded upon an act of Congress and on a contract made with the United States government. He uses the following language: "I think the fact that authority must flow from Congress to do the things called for by the contract, indicates that an act of Congress is involved. It is the fountain head of the whole controversy. The Shipping Board could not act at all, legally, unless it acted pursuant to the authority given it by some law. So we start out necessarily with a controversy that involves an act of Congress. Next, there can not be any doubt but that there is a very definite, express contract. That is the whole basis of the suit. If it be said this suit does not arise upon the contract because the contract does not provide for the recovery of money, it seems to me that is rather a specious argument, because the money would not have been paid, and there would not have been any attempt to recover it, unless there had been a contract in the first instance."

■ We think that the error consists in overlooking the fact that there is nothing in either the Merchant Marine Act or the contract loan agreement or mortgage which says a word about the government repaying any excess interest to the Steamship Company. In other words, the statute and the contract, in so far as they are involved in

this suit, merely show the history out of which the cause of action, if maintainable, grows. The cause of action itself is based entirely upon the theory of the law that one party exacting money illegally and over protest from another party is under a legal duty to repay the same. This is exactly the situation and exactly the legal duty which give rise to a legal relation denominated as a contract implied in law. The contract is not an express contract because there is not a word in the contract itself dealing with the question of repayment of excess interest. It is not a contract implied in fact because the whole suit bristles with the disagreement between the government agency and the Steamship Company over the very question of the rate of interest. When stripped of background and the purely evidentiary allegations, the complaint states a cause of action against the United States which has as its sole basis the duty resting upon the United States to repay to the appellant money, which the United States has received in contravention of law and over protest, and therefore should, under the theory of the contract implied in law, repay to the appellant.

Many cases construing the Tucker Act support our conclusion that a suit based on a contract implied in law is not maintainable against the United States by reason of the Tucker Act itself. Not only do these authorities support this general statement of law, but the similarity between the contracts dealt with in these cases and the situation in the instant case convince us that we are correct in determining that the plaintiff here has a cause of action based entirely upon a contract implied in law.

In Baltimore & Ohio Ry. Co. v. United States, 261 U. S. 592, 597, 43 S. Ct. 425, 426, 67 L. Ed. 816, Mr. Justice Sanford wrote the opinion. This was an action under the Dent Act (50 USCA § 80 note) to recover compensation for constructing temporary barracks for the use of United States troops under an alleged "implied agreement," entered into with Army authorities. The court in holding that the plaintiff was not entitled to recover said: "The 'implied agreement' contemplated by the Dent Act as the basis of compensation is not an agreement 'implied in law,' more aptly termed a constructive or quasi contract, where, by fiction of law, a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress, but an agreement 'implied in fact,' founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."

The Baltimore & Ohio case, supra, was followed in Merritt v. United States, 267 U. S. 338, 45 S. Ct. 278, 69 L. Ed. 643. There Mr. Justice Brandeis wrote the opinion. This was an action by a subcontractor to recover from the government money which the government had exacted of a contractor on learning of fraud which the principal contractor had practiced on a subcontractor. It was held that the plaintiff could not recover under the Dent Act. It was further held that the plaintiff could not recover under the Tucker Act because the petition did not allege any contract, express or implied in fact, entered into by the government with the plaintiff to pay the latter for the khaki supplied. Nor did it set forth facts from which such a contract could be implied. The Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had only upon a contract implied in law.

Perhaps the case nearest in point of fact to the instant case is United States v. Minnesota Mutual Inv. Co., 271 U. S. 212, 46 S. Ct. 501, 70 L. Ed. 911. The Minnesota Mutual Company brought suit against the United States under the Tucker Act to recover interest on money which the plaintiff had been required to place in the registry of the court. The clerk of the court had immediately deposited the money in a bank and had received interest on this deposit at the rate of 2 per cent. per annum. This interest he had in turn paid into United States Treasury for the use of the government. It was alleged that the United States was not interested in the sum of money so deposited, had no right, title, or interest therein, directly or indirectly, and that the interest so paid was the property of the plaintiff. The court, in an opinion by Chief Justice Taft, held that even if the United States had no right to collect the interest from the bank, no cause of action was created in favor of the investment company against the United States for this illegal collection. There was no contract with the government, express or implied, by reason of that collection by which the government was bound to pay the money to the investment company, and that without this no recovery could be had. An implied contract in order to give the Court of Claims or

a District Court jurisdiction under the Tucker Act to give judgment against the United States must be one implied in fact and not based merely on equitable considerations or implied in law.

Goodyear Tire & Rubber Co. v. United States, 276 U. S. 287, 48 S. Ct. 306, 72 L. Ed. 575. This action was brought under the Tucker Act to recover rent claimed under a lease to the United States. The court held that the right to sue the United States under the Tucker Act on a claim founded on contract—as this was—must rest upon the existence of a contract express or implied in fact, no right of action being given by the act in cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law.

State of Alabama v. United States, 282 U. S. 502, 51 S. Ct. 225, 75 L. Ed. 492. This suit was brought in the Court of Claims [38 F.(2d) 897] by the state of Alabama to recover from the United States a tax imposed by the law of the state upon the privilege of manufacturing and selling hydroelectric power. The claim was based upon a sale by the United States of the surplus power generated by it at its dam at Muscle Shoals, Ala. The government demurred on the ground that the petition did not set forth a cause of action within the jurisdiction of the court. The demurrer was sustained. The Supreme Court held that the petition should have been dismissed for want of jurisdiction. That the contract to be recovered upon must be an actual one, and if implied, must be implied in fact, not merely implied by fiction, or, as it is said, by law.

In Sutton v. United States, 256 U. S. 575, 581, 41 S. Ct. 563, 565, 65 L. Ed. 1099, 19 A. L. R. 403, Mr. Justice Brandeis said: "There is no necessity to consider what may be the equitable rule where there is a claim of unjust enrichment through work done upon the land of another under a mistake of fact. [Citing cases.] Nor need we consider whether the doctrine is ever applicable to transactions with the government. For the right to sue the United States in the Court of Claims here invoked must rest upon the existence of a contract express or implied in fact."

Cases illustrating jurisdiction under the Tucker Act because of some other statute creating a right to sue the United States are easily found. We cite two as illustrations. United States v. Hvoslef, 237 U. S. 1, 35 S. Ct. 459, 59 L. Ed. 813, Ann. Cas. 1916A, 286; and United States v. Emery, Bird;

Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825.

The diligent reader of the cases cited can easily find a score of other cases dealing with the principles involved here and which we have examined in the preparation of this opinion. In closing we refer again to the text of Federal Law of Contracts, p. 311, vol. 2, § 493, where an excellent discussion of contracts implied in law is to be found.

From the foregoing, we conclude that the District Court was in error in entertaining jurisdiction of this suit and that the judgment below must therefore be reversed for want of jurisdiction.

Reversed.