**O. Kenneth HICKMAN et al.**

v.

**UNITED STATES of America.**

**Civ. A. No. 4956.**

United States District Court
W. D. Louisiana, Shreveport Division.

Nov. 25, 1955.

Tucker, Bronson & Martin, Shreveport, La., for plaintiffs.

T. Fitzhugh Wilson, U. S. Atty., and Edmund E. Woodley, Asst. U. S. Atty., Shreveport, La., for the Western District of Louisiana, M. Hepburn Many, Asst. U. S. Atty., New Orleans, La., for the Eastern District of Louisiana, for the United States.

DAWKINS, Jr., Chief Judge.

Nominally seeking a small money judgment against the United States, but actually and indirectly presenting for adjudication the legal title to a certain mineral servitude, upon which their monied demands are based, and which they claim adversely to the Government, plaintiffs attempt here to hinge jurisdiction upon the Tucker Act, 28 U.S.C.A. § 1346.

The gravamen of their complaint is that on November 13, 1930, plaintiffs' ancestors, to whose rights, if any, they have succeeded, sold to the Government by mesne conveyance certain lands in Grant Parish, Louisiana. In this deed there was a reservation in favor of the vendors, the pertinent portion of which reads:

"Also reserving unto the grantors, their heirs and assigns, for a period of ten years from the date hereof, the right to mine, bore for and remove all minerals of every description, whether fixed or fugitive, deposited in or under said tracts of land, with full right to the vendors, their heirs, executors, administrators, successors, lessees and assigns, at any and all times to enter upon said lands and to mine, bore for and remove mineral deposits of every description, whether fixed or fugitive, found therein or thereon without any claim for damages on behalf of the United States of America, its successors and assigns, Provided: That if at the termination of the ten (10) year period of reservation it is found that such minerals and mineral rights and interests are being operated or have been operated at any time during the preceding five years, to commercial advantage, then and in that event, the said right to mine, bore for and remove minerals shall be extended for a further period of five years; and further, that the right to mine, bore for and remove minerals shall be extended in periods of five (5) years whenever operation during the preceding five (5) years has been for an average of one hundred twenty (120) days per year throughout the period; Provided, however, that the right or rights to mine, bore for and remove minerals so extended shall be limited to the land section or sections in which shall be situated the location or locations that are being operated or have been operated any time during the five (5) years pre-vious to the extension; and Provided, that at the termination of the ten (10) year reservation period, if not extended, or at the termination of any extended period, in case the operation has not been carried on for the number of days and under the conditions stated, the right to mine, bore for and remove minerals shall terminate and a complete fee in the land become vested in the United States; * * *"

Plaintiffs do not pretend that any of the extending conditions of this reservation have been complied with, i. e., they do not claim that there has been at any time any mining, drilling or removal of minerals by them, their ancestors, or by any one on their behalf, which would have kept the reservation alive. Instead, they rely entirely upon the following facts and circumstances as having that effect:

1.) On August 1, 1940, Louisiana Act No. 315 of 1940, enacted by the Legislature, became effective. The pertinent section of this statute, LSA–R.S. 9:5806, reads:

"When land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm, or corporation, and by the act of acquisition, verdict, or judgment, oil, gas, or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas, or other minerals or royalties, still in force and effect, the rights so reserved or previously sold shall be imprescribable."

Plaintiffs contend that when this provision of Louisiana law went into effect the mineral reservation of November 13, 1930, by its terms was still in force, and thereby became perpetually vested; that "* * * the contractual prescription or limitation stipulated in said deed became inoperative on August 1, 1940,

\* \* \*" because the Act "\* \* \* specifically provided that mineral rights which had been reserved as to property theretofore conveyed to the United States of America \* \* \* should be imprescriptable". Therefore, they claim, as successors to their ancestors, and having never formally divested themselves of the servitude, that they own it exclusively, the Government possessing no legal title.

2.) On November 10, 1953, acting through its duly authorized agent, the Government executed in favor of Norman G. Germany, for a bonus of $240, an oil, gas and mineral lease, effective December 1, 1953, for a primary term of five years, covering the property here involved, together with other lands; that "Petitioners, by an instrument executed in July of 1954, in consideration of the sums paid by Norman G. Germany to the United States of America, pursuant to the oil and gas lease hereinabove referred to, did ratify, confirm, join in and adopt the above described oil, gas and mineral lease in favor of Norman G. Germany, insofar, and only insofar, as said lease covered and affected the property \* \* \*"; that "by virtue of said action of ratification referred to \* \* \*, petitioners became parties to the oil, gas and mineral lease \* \* \*, and, as between petitioners and the United States of America, said lease became a joint and integrated lease between the United States and petitioners \* \* \* and by virtue thereof, petitioners are entitled to receive from the United States of America their proportionate part of the proceeds of said contract, which has heretofore accrued, and, their proportionate part of any additional proceeds accruing pursuant to the contract in the future and during the pendency of this suit \* \* \*." This, plaintiffs say, resulted from the rule of law established by the Louisiana Supreme Court in the cases of Louisiana Canal Co., Inc., v. Heyd, 1939, 189 La. 903, 181 So. 439, 116 A.L.R. 1260, and Parten v. Webb, 1941, 197 La. 197, 1 So.2d 76.

The prayer is for judgment in their favor, and against the Government, for the amount which they claim as their share of the bonus paid to the United States by Germany for the lease of November 10, 1953, plus their share of any delay rentals or royalties paid "\* \* \* pursuant to the lease \* \* \*".

The Government has moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiffs have moved for summary judgment. Since it completely disposes of the case, we shall pass only upon the jurisdictional question, it being unnecessary that we decide the other points presented.

The Tucker Act, 28 U.S.C.A. § 1346, in pertinent part, reads as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded \* \* \* upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

By repeated and unwavering decisions interpreting this Act, the Supreme Court has settled the law:

"\* \* \* The right \* \* \* to sue the United States under the Tucker Act on a claim founded on contract \* \* \* must rest upon the existence of a contract express or implied in fact, no right of action being given by the Act in cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law." Goodyear Tire & Rubber Co. v. United States, 276 U.S. 287, 48 S.Ct. 306, 307, 72 L.Ed. 575.

To the same effect are State of Alabama v. United States, 282 U.S. 502, 51 S.Ct. 225, 75 L.Ed. 492; United States v. Minnesota Mutual Investment Co., 271 U.S.

212, 46 S.Ct. 501, 70 L.Ed. 911; Merritt v. United States, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643; Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816; Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099; Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; Hill v. United States, 149 U.S. 593, 13 S. Ct. 1011, 37 L.Ed. 862.

In Baltimore Mail Steamship Co. v. United States, 76 F.2d 582, 584, certiorari denied 296 U.S. 595, 56 S.Ct. 111, 80 L.Ed. 421, the Fourth Circuit Court of Appeals aptly stated:

> "This question of jurisdiction must always be viewed in light of the well-accepted premise that a suit will not lie against the United States unless clearly authorized by statute. It is well understood that the Tucker Act has been called a great remedial statute and that it should not be looked upon with an evil eye. The late Justice Holmes has pointed out that courts should give a broad interpretation to this 'great remedial statute' and that it is not to be 'read with an adverse eye.' But, at the same time, when we strip the present suit at law of all background and get down to the real essence of the cause of action stated, we think that it is a suit against the United States on a contract implied in law. See discussion of this matter, pages 3, 4, and 5, vol. 1, Williston on Contract. See, also, Federal Law of Contracts, p. 311, vol. 2, § 493. Critics have suggested that the distinction between a contract implied in fact and a contract implied in law is artificial, metaphysical, and without substance. However, we find that the Supreme Court in dealing with the very question of jurisdiction in the District Court has recognized the distinction, and it is well settled that the Tucker Act, while giving jurisdiction to the District Court over a suit against the government based on a contract implied in fact, does not give jurisdiction over a suit based on a contract implied in law."

Defendant maintains that the claims asserted by plaintiffs here clearly are upon contracts "implied in law", and hence are not cognizable under the Tucker Act. Plaintiffs, on the other hand, while conceding that there is no express contract upon which they can stand, strongly insist that their action comes within the Act because:

a.) Based upon the deed from their ancestors to the United States, whereby the minerals were reserved, this suit is for liquidated damages in a case not sounding in tort;

b.) Based upon the same deed and reservation of minerals, this suit " * * * is predicated upon rights implied therein, and therefore, upon a 'contract implied in fact' "; and

c.) Based upon the lease from the United States to Germany, as ratified unilaterally by plaintiffs, " * * * there is a contractual relationship between the parties, and their suit is predicated upon rights implied therein, and therefore, upon a 'contract implied-in-fact' ".

■ Plaintiffs' position is unsound, we think, and springs from a misconception of the governing principles involved. The fundamental difference between a contract "implied in fact" and one "implied in law" is not necessarily whether there has, or has not, been a written instrument executed between the parties. The true criterion is that a contract "implied in fact" rests upon *consent* implied *from facts and circumstances showing a* mutual intention to contract, whereas in one "implied in law" *consent is lacking,* being forced upon the parties by law, sometimes even in the teeth of their express contract.

17 C.J.S., Contracts, § 4 b, p. 318, et seq., states the rule as follows:

> "A contract implied in fact is one not expressed by the parties, but implied from facts and circumstances

showing a mutual intention to contract. It does not arise contrary to law or the express declaration of the parties. Contracts implied in law or quasi or constructive contracts are distinguishable in that such contracts do not rest on assent of the parties, but may exist regardless of assent.

" * * * A 'contract implied in fact,' which term has been subjected to criticism, or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. It has been said that such a contract must contain all the elements of an express contract, *it rests on consent,* it is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown. *Such a contract does not arise out of an implied legal duty or obligation, but out of facts from which consent may be inferred.*

\* \* \* \* \*

" * * * A distinction exists between contracts implied in fact and those which are implied in law. Thus, a contract implied in fact is a true contract, the agreement of the parties being inferred from the circumstances, while a contract implied in law is but a duty imposed by law and treated as a contract for the purposes of a remedy only. Another distinction between such classes of implied contracts lies in the fact that, as is stated infra § 30, in the case of contracts implied in fact, there must be an assent of the parties, as in express contracts, whereas, as stated infra § 6, in the case of contracts implied in law, or more properly quasi or constructive con-

tracts, *such element of assent is lacking.* The distinction has also been stated that a contract implied in fact is an implied contract in which the *intention* is ascertained and enforced, while a contract implied in law is a mere fiction, *the intention being disregarded,* and the quasi contractual obligation *being imposed by law* to bring about justice, *without regard to the intention of the parties. Again, in the case of contracts implied in fact, the contract defines the duty, while in the case of constructive contracts, the duty defines the contract."* (Emphasis supplied).

American Jurisprudence, at Volume 12, page 502, et seq., verbo "Contracts", § 6, puts it this way:

"Both express contracts and contracts implied in fact are *based on consent.* Evidently, in view of the fact that these are the contracts which are usually before the courts, it has been said that there is no contract without the consent of the parties. Clearly, such an observation must have been made without regard to the existence of certain legal duties which, though of a contractual nature, are not based on consent. These are sometimes spoken of as contracts implied in law, but are more properly called quasi contracts or constructive contracts. * * * In the case of such contracts, the promise is purely fictitious and is implied from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. *The intention of the parties in such case is entirely disregarded, while in cases of express contracts and contracts implied in fact the intention is of the essence of the transaction.* As has been well said, in the case of actual contracts the agreement defines the duty, while in the case of quasi contracts the duty defines the contract. A quasi contract has no reference to the intentions or ex-

pressions of the parties. *The obligation is imposed despite, and frequently in frustration of, their intention. For a quasi contract neither promise nor privity, real or imagined, is necessary.* \* \* \* The duty, which thus forms the foundation of a quasi-contractual obligation, is frequently based on the doctrine of unjust enrichment. \* \* \* " (Emphasis supplied).

■ It is obvious that plaintiffs here seek to recover on the basis of contracts "implied in law". Were it not for the Louisiana Legislature having adopted Act 315 of 1940, the mineral reservation made by plaintiffs' ancestors would have expired by its own terms on November 13, 1940. Only by virtue of that statute could the reservation have been continued in force—if it was continued, which we do not decide. Consequently, taking the point of view most favorable to plaintiffs, if we assume that this reservation is not dead by its terms, its continued life was created by the Louisiana statute, and only by that—not because of but in spite of the contract. This, then, engrafted upon and contrary to the original contract, would be an implication of law sought to be forced upon the Government without its consent. Like the situation presented by the Ohio common law concerning reconduction of rental contracts, involved in the Goodyear case, supra, it would be a contract "implied in law". There the Ohio law was in force when the contract was entered into; whereas here the Act of the Legislature came nearly ten years afterward.

In the same category is plaintiffs' claim based upon the Heyd and Parten cases, supra. There is some doubt that those decisions stand for exactly what plaintiffs claim they do, but again assuming, without deciding, that their effect is to hold that plaintiffs' unilateral action in ratifying the Germany lease created an implied contract between plaintiffs and the United States, again the element of consent by the Government is lacking

and there would be a contract "implied in law". Moreover, to have had any standing whatever upon which to predicate its unilateral action, as having created such a contractual relationship, plaintiffs first must have established the continued legal existence of the mineral reservation, which, as we have shown, necessarily proceeded, if at all, from a contract "implied in law".

In order to confer jurisdiction on this Court, plaintiffs' claim for "liquidated damages in a case not sounding in tort" likewise must have as its foundation a contract, express or implied in fact. The express contract gave no such rights. Any implied contract which might be found to exist, being contrary to the original agreement and never consented to by the Government, necessarily would be one "implied in law".

This case is essentially different from United States v. Nebo Oil Co., 190 F.2d 1003, where the United States Court of Appeals for the Fifth Circuit sustained the constitutionality of Louisiana Act 315 of 1940, in that there the suit was brought by the Government, seeking a declaratory judgment. In doing so, no questions of jurisdiction under the Tucker Act were presented, because the Government in suing exercised its prerogative to assert the right it was claiming in a Federal District Court. Here, on the contrary, the suit is by individual citizens against the sovereign, which has given through Congress a limited consent to be sued only in certain classes of cases. This is not one of those cases.

Hughes Transp., Inc., v. United States, 121 F.Supp. 212, 128 Ct.Cl. 221, relied on by plaintiffs, is not in point, for the Court there found, loc. cit., 121 F.Supp. 226:

"A careful study of the cases dealing with the contractual liability of the United States, and holding that so-called 'implied in law' or quasi contracts are outside the jurisdiction of the Court of Claims, impells the conclusion that under the arrangements that were made and

the other facts and circumstances, the instant case involves no such quasi contract.

\* \* \* \* \*

"\* \* \* in our opinion plaintiff and the intervenor, the State of Kentucky, are not attempting to enforce a quasi contract but an express contract, perhaps to some extent implied, in fact."

Deterding v. United States, 69 F.Supp. 214, 216, 107 Ct.Cl. 656, also cited by plaintiffs, is likewise inapposite. There the Court found, from the plain wording of the contract, that plaintiff's ancestor in title had reserved the mineral rights in question and that the Government had no title to them. Consequently, it held that jurisdiction properly was present under the Tucker Act:

"We think that the plaintiff owns the exclusive right to take gas from the land.

\* \* \* \* \*

"We think that the relation between the plaintiff and the United States, in relation to their respective rights in the land in question, is a conventional or contractual relation, within the meaning of our jurisdictional statute, 28 U.S.C.A. § 41 et seq. [Now 28 U.S.C.A. § 1346]. \* \* \* The deed from the plaintiff's predecessor to the predecessor of the United States was a determination and statement of what rights the parties and their successors were to have in this land. When the United States took the Anderson title, it took it, not by acquisition in some overriding capacity as sovereign, but as successor to Anderson, and subject to his obligations, *as they were stated in the deed.* His obligations became those of the United States, because it was the intent of the parties, and is the rule of law, that successors shall be bound." (Emphasis supplied).

As stated by the Court of Appeals for the Fifth Circuit, in Le Mieux Bros. v. Tremont Lumber Co., 140 F.2d 387, 389:

"United States District Courts are courts of limited jurisdiction. Creatures of statute, they have only such jurisdiction as the statutes expressly confer, and this jurisdiction must always affirmatively appear."

Jurisdiction does not appear here. Defendant's motion to dismiss for lack of jurisdiction is good. It is Granted and the suit will be Dismissed.