118

**ALLIANCE ASSURANCE COMPANY,
Ltd., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

United States District Court
S. D. New York.

Nov. 15, 1956.

Bigham, Englar, Jones & Houston,.
New York City, for plaintiff, James H.
Simonson, New York City, of counsel.

Paul W. Williams, U. S. Atty. for the·
Southern Dist. of New York, New York
City, for defendant, Foster Bam, Asst.,

U. S. Atty., Pelham Manor, N. Y., of counsel.

LEVET, District Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) and the Tucker Act, 28 U.S. C.A. § 1346(a) (2).

Plaintiff is an insurance corporation organized under the laws of the United Kingdom of Great Britain, with its office and place of business at 90 John Street, New York City. Plaintiff issued an insurance policy covering a case containing six pieces of woolen goods. On or about January 12, 1953, the goods were delivered into the custody and control of the Appraiser of Merchandise, Bureau of Customs of the United States of America, at the United States Public Stores, 201 Varick Street, New York City. The government admits that said case contained six pieces of woolen goods valued at $2,460.59. The government also admits that the goods were demanded by the licensed broker, H. W. Robinson & Co., Inc., and that delivery to said broker was not made since the case could not be found. Being unable to deliver the case of woolen goods, the government refunded the customs duty paid for said goods. In accordance with its Certificate of Insurance, the plaintiff paid to the owner of the case of woolen goods the value of said goods, thereby becoming subrogated to the owner's rights therein.

Plaintiff predicates its claim on two theories, namely, breach of an implied contract of bailment, and an action for negligence by reason of the loss of said goods.

At the trial, the plaintiff rested its case on the basis of the admissions by the government. It was stipulated by the parties that should plaintiff succeed in this action it would be entitled to recover the sum of $2,460.59, said sum being the monetary value of the woolen goods.

At the close of the trial the government renewed its motion to dismiss the complaint for lack of jurisdiction and moved for judgment on the ground that the plaintiff had not established a claim for which relief could be granted in that the government acted with care and prudence in the handling of the woolen goods.

The case of woolen goods in question was purchased by Carlyle Clothes, Inc. and consigned to H. W. Robinson & Co., Inc., customs brokers and agents for Carlyle. The goods arrived aboard the S. S. Queen Mary on December 21, 1952. The customs broker made an entry at Public Stores, pursuant to 19 U.S.C.A. § 1499. An entry consists of a group of documents which enables the importer of the goods to enter the foreign merchandise into American commerce. A duty of $708.25 was paid by the customs broker and an entry permit was dated and marked "Paid." Thereafter, the goods were released by the customs inspector to the carrier, Cunard Steamship Lines, for delivery to the government cartmen for shipment to the Public Stores, where the goods were to be inspected and appraised for duty purposes.

The goods arrived at the Public Stores on January 13, 1953, with ten "Elliott Fisher" tickets. These tickets contain information to the effect that the goods are dutiable, the name of the ship on which they arrived, the entry number, the name of the importer of record, and the initials of the customs examiner who was to inspect the goods at the Public Stores. The case of woolens was sent to the examiner's section on the fifth floor. There it was opened and the goods were examined and were found to be properly invoiced. Thereafter, the case was repacked, nailed and marked by a "verifier" who worked under the supervision of the examiner.

The examiner testified that although the importer had forty-eight hours within which to pick up the case after the examination, it was his belief that the case of woolens did not remain on the fifth floor after January 13, 1953, because if it had, he would have noticed it at the end of the day.

It appears that a delivery ticket was sent down to the first floor invoice section

and was placed in the box which was assigned to H. W. Robinson & Co., Inc., the customs broker. It further appears that said customs broker gave the delivery order to its trucking company, Dependable Trucking Co., who presented the ticket at the delivery section of the Public Stores on January 13, 1953 at 4:19 p. m. The trucking company was required to return the next day in order to pick up the goods since the delivery ticket was presented late in the afternoon. A notice was sent to the examination floor advising the examiner that the trucking company had presented the delivery ticket and that the goods were to be sent down to the delivery floor. From this point, there is no evidence to indicate what happened to the case of woolen goods.

An administrative assistant in charge of receiving and delivery at the Public Stores testified that he personally searched the fifth and first floors as soon as the goods were reported missing. Thereafter, he checked the invoice section in order to determine whether or not the goods had been misdelivered. He stated that in such event the records would have revealed a misdelivery. A search notice was sent out on January 21, 1953, to every foreman in the Public Stores building. The search notice was returned by all the foremen with the notation thereon that they could not find the case of woolens.

There were 525 employees in the Public Stores building in 1953 and over 325,-000 packages were routed through the Public Stores during said year. It also appears that guards are stationed at all exits and merchandise cannot leave the building without first being checked by them.

The plaintiff's cause of action for breach of an alleged contract of bailment is governed by Section 1346(a) (2) of 28 U.S.C.A., commonly known as the Tucker Act. This Act constitutes a waiver by the United States of its sovereign immunity and its consent to be sued for certain claims not sounding in tort. The statute provides:

"§ 1346. United States as defendant

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\*    \*    \*    \*    \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

■ It is well settled that although the Tucker Act confers original jurisdiction upon a federal district court to entertain suits against the government based on express or implied in fact contracts, said Act does not give federal district courts jurisdiction over actions founded on equitable considerations and implied in law. United States v. Minnesota Mutual Investment Company, 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911; Merritt v. United States, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643; Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099; Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L. Ed. 162; Baltimore Mail S. S. Co. v. United States, 4 Cir., 1935, 76 F.2d 582, certiorari denied 296 U.S. 595, 56 S.Ct. 111, 80 L.Ed. 421; Gallant v. Waterman S. S. Corp., D.C.S.D.N.Y.1950, 90 F. Supp. 495; Bielecky v. United States, D.C.E.D.N.Y.1928, 26 F.2d 746.

■ The distinguishing feature of a contract implied in law is that it is not based on the apparent intention of the parties to undertake the performance in question, nor is it a promise. The obligations flowing from a contract implied in law are created by law for reasons of justice without reference to the intentions of the parties. Such contracts are not really contracts at all since they do not arise from mutual agreement and intent to promise. They have been termed "quasi contracts" in order to avoid con-

fusion with the other classes of contracts. The distinction between a contract implied in fact and a quasi contract was clearly expressed in Miller v. Schloss, 218 N.Y. 400, 113 N.E. 337, as follows:

"* * * The courts recognize by the language of their opinions two classes of implied contracts. The one class consists of those contracts which are evidenced by the acts of the parties and not by their verbal or written words—true contracts which rest upon an implied promise in fact. The second class consists of contracts implied by the law where none in fact exist—*quasi* or constructive contracts created by law and not by the intentions of the parties. A contract cannot be implied *in fact* where the facts are inconsistent with its existence, or against the declaration of the party to be charged, or where there is an express contract covering the subject-matter involved, or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary, and, unless he has conducted himself in such a manner that his assent may fairly be inferred, he has not contracted. * * *

"* * * A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth, it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy. * * *" 218 N.Y. at pages 406–407, 113 N.E. at page 338.

It is manifest from the facts in this case that the government did not intend to enter into any contractual relationship when it required the importer to deliver the case of woolen goods into its possession for inspection by the customs officials. The element of bargain was missing in that the importer had no choice but to deliver the case of woolens into the hands of the customs officials if he wanted to import the goods. The delivery of the goods into the possession of the customs officials created a bailment relationship. The obligation to return the goods was imposed by law rather than by contract. "Bailment does not necessarily and always, though generally, depend upon a contractual relation. It is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense or not." Foulke v. New York Consolidated R. Co., 228 N.Y. 269, 275, 127 N.E. 237, 239, 9 A.L.R. 1384. See also Seaboard Sand & Gravel Corp. v. Moran Towing Corp., 2 Cir., 1946, 154 F.2d 399, 402.

Consequently, plaintiff's cause of action predicated on the Tucker Act must be dismissed for lack of jurisdiction because it is not based on an express or implied contract within the meaning of said Act.

Plaintiff also sues under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), to recover for the loss sustained as a result of the alleged negligence of the customs officials in handling the case of woolen goods. Said Act provides as follows:

"§ 1346. United States as defendant

*       *       *       *       *

"(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the Dis-

trict Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

■ The government contends that Congress expressly excluded a suit of this nature from the consent to suit under the main body of the Act by reason of Section 2680(c) of Title 28 U.S.C.A., which provides:

"§ 2680.   Exceptions

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

\*   \*   \*   \*   \*

"(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer."

The aforementioned provision specifically excepts any claim arising from the detention of goods by customs officers. However, it does not appear that this case concerns a "detention" of goods. The word "detain" according to Webster's New International Dictionary of the English Language (1934) means:

"1.   To hold or keep as in custody.

"2.   To keep back; to withhold, as that which is due.

"3.   To restrain from proceeding; to stay or stop; to delay; as we were *detained* by accident.

"4.   To keep; to retain (in possession, place, condition, etc.); as they were *detained* in ignorance."

The word "detention" is defined by the same source as follows:

"1.   Act of detaining, or keeping back; a withholding.

"2.   State of being detained (stopped or hindered); delay from necessity.

"3.   Confinement; restraint; *custody*. [Emphasis added.]

"4.   A mere keeping in one's *physical possession or control;* mere retention or occupation of anything." [Emphasis added.]

In response to plaintiff's demand for admissions, the government stated as follows: "Defendant does not believe that the case and its contents were 'lost' while in defendant's custody and control, but defendant has no direct knowledge of what happened to the case; defendant has reason to believe, and does strongly believe, that the case was stolen." Manifestly, the government is not detaining or withholding the case of woolen goods since it is conceded that the goods have disappeared. Therefore, Section 2680(c) of Title 28 U.S.C.A. does not bar plaintiff's claim for the alleged negligent loss of goods by the customs officials.[1]

■ Having determined that the government is subject to suit for the alleged negligence, it remains to consider whether or not the plaintiff has established its claim. It is conceded that the case of woolen goods was left in the possession of the government, as bailee, and

1. It is significant to note that the word "loss" appears specifically in subsection (b) of Section 2680, which deals with claims relating to postal matters, whereas it does not appear in subsection (c). Subsection (b) provides:
"§ 2680.   Exceptions

"The provisions of this chapter and section 1346(b) of this title shall not apply to—
\*   \*   \*   \*   \*
"(b) Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."

that said goods were not returned when demand was made. Upon these facts it is incumbent on the bailee to show the surrounding circumstances of the loss, the care given to the handling of the property and why it cannot be returned. This rule was clearly expressed in Fidelity and Guaranty Insurance Corp. v. Ballon, 1st Dept., 1952, 280 App.Div. 373, 375, 376, 113 N.Y.S.2d 546, 548 as follows:

" * * * Under the law of bailment, the burden of proof to establish negligence is on the bailor and remains with him throughout the trial. Plaintiff makes out a prima facie case by proof that the property was left in the possession of the bailee and was not returned. Claflin v. Meyer, 75 N.Y. 260; Stewart v. Stone, 127 N.Y. 500, 506, 28 N.E. 595, 596, 14 L.R.A. 215. The burden of going forward with the evidence then shifts to the bailee to show the circumstances of the loss in order to rebut the presumption of negligence which would arise from a delivery and a failure to return. It is necessary for the bailee to explain how he cared for the property, and why he could not return it. * * *

"If either in the course of plaintiff's proof or that of defendant's it appears that the bailed property must have been lost by theft, to justify a recovery, plaintiff always has the burden of showing that the loss arose from the negligence of the bailee. * * * "

The effect of this rule is to shift the burden of proceeding or going forward with the evidence from the bailor to the bailee. The ultimate burden of proof remains with the bailor to prove negligence.

In the case at bar the government has shown the surrounding circumstances, that it exercised due care in handling the case of woolen goods and that, nevertheless, said goods disappeared. Under such circumstances the bailee sufficiently exonerates itself by showing that the cause of loss was a mystery. See Sanborn v. Kimball, 106 Me. 355, 76 A. 890. It then devolves upon the plaintiff to show that the bailee was negligent. The plaintiff in the instant case has failed to establish that the government was negligent and that the disappearance of the case of woolen goods was occasioned by such negligence.

Findings of Fact:

1. A case of woolen goods, marked "CCI 21" and consigned to H. W. Robinson & Co., Inc. was shipped to the United States on the S.S. Queen Mary, arriving on December 21, 1952.

2. H. W. Robinson & Co., Inc., customs brokers, made an entry at Public Stores, pursuant to Title 19 U.S.C.A. § 1499 and paid a duty of $708.25 for said goods.

3. Said goods were sent to the Public Stores at 201 Varick Street, New York, N. Y., arriving January 13, 1953.

4. The case of woolen goods was examined by examiner Louis Lister and found to be properly invoiced.

5. A delivery ticket was presented on January 13, 1953 at 4:19 P.M. by Dependable Trucking Co. on behalf of H. W. Robinson & Co., Inc.

6. The case of woolen goods was not turned over to Dependable Trucking Co. or H. W. Robinson & Co., Inc., although demand for same had been made.

7. The duty which had been paid for said goods was refunded by defendant.

8. It has been stipulated that plaintiff, insurer and subrogee of H. W. Robinson & Co., Inc., is the proper party to maintain this action and that the goods in question are valued at $2,460.59.

9. The defendant has shown that the manner in which it handles the items received at the Public Stores is both orderly and careful, and that the case of woolen goods was processed according to the established procedure.

10. Nevertheless, said goods have disappeared and the manner in which they have vanished remains a mystery.

**11.** There is no evidence that the defendant failed to exercise proper precautions to insure the return of the items processed through the Public Stores.

Conclusions of Law:

**1.** This Court does not have jurisdiction to entertain plaintiff's cause of action under 28 U.S.C.A. § 1346(a) (2), commonly known as the Tucker Act, and said cause of action is dismissed.

**2.** Plaintiff's cause of action for negligence pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), is not barred by reason of the exception contained in 28 U.S.C.A. § 2680(c).

**3.** Plaintiff has failed to prove that the customs officials were negligent in the handling of the case of woolen goods, which is the subject of this action.

**4.** Judgment should be entered in favor of the defendant.