Nick Ray **HOLBERT**
v.
**UNITED STATES** of America.
No. 3269.

United States District Court
E. D. Tennessee, N. D.
Oct. 2, 1958.

Ely & Ely, Knoxville, Tenn., Dannel & Fowler, Loudon and Lenoir City, Tenn., for plaintiff.

John C. Crawford, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is a suit to collect $10,000 which represents the proceeds of bonds allegedly owned by the plaintiff and cashed by his father, George W. Holbert, and used to pay taxes of the father to the Government. The suit was originally for a sum in excess of $10,000 but plaintiff has waived his claim for any sum in excess of $10,000. Jurisdiction is based on Title 28 U.S.C.A. § 1346(a) (2), commonly referred to as the "Tucker Act." The pertinent part of this Act is as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\*　\*　\*　\*　\*　\*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

The suit as originally filed sought alternative relief based upon an implied contract and upon a tort allegedly committed by an Internal Revenue agent. This second ground of relief has been abandoned since the two-year statute of limitations on tort actions has run. See, Simon v. United States, 5 Cir., 244 F.2d 703.

The theory of plaintiff is that he is entitled to the "E" bonds turned over to the Government and applied on the income tax of his father, George W. Holbert, or to the proceeds of the bonds, because of an implied agreement on the part of the Government to return them to him inasmuch as the Government wrongfully obtained them.

Plaintiff says that he was approximately three months of age when the property, from which the bonds were ultimately derived, was given to him and that he would not be chargeable with knowledge of any wrongdoing on the part of his

father in taking the property in his name at the time.

The Government denies an implied contract between it and the plaintiff, or any one representing the plaintiff. The Government claims that the father inherited real property that was placed in the name of the son in order to prevent the Government from perfecting a lien against him for the payment of income taxes. This property was later condemned by the Tennessee Valley Authority and the funds derived therefrom were invested in other lands, title to which was taken in the name of the son. When the land last acquired was sold the proceeds thereof were invested in Government "E" bonds under authority of the Chancery Court of Loudon County and the bonds were ordered to be held by the Clerk and Master of that Court for the use and benefit of the son. In 1950, when the son was 14 years of age, the bonds were mailed by the Clerk and Master to the father in Knoxville, or to the Bank of Knoxville, and the father cashed them and used the proceeds to pay on his income taxes. The bank, before cashing the bonds, called a representative of the Internal Revenue Service and advised him that they could not identify the father and therefore could not cash the bonds. The Internal Revenue Agent identified the father and the bonds were thereupon cashed by the bank and the proceeds turned over to the son, and the son in turn turned the money over to the Internal Revenue Service which applied the proceeds to the taxes owed by his father to the Government. The identical procedure was followed on two other occasions in 1950.

The Government says that the Clerk and Master was advised by plaintiff's representative that he wrongfully turned over the bonds to the bank, or to plaintiff's father, and that the surety on the Clerk and Master's bond made settlement for the alleged wrongful act of the Clerk and Master for allowing the bonds to get out of his hands.

The sole issue for the determination of this Court, as set forth in pre-trial order dated January 3, 1958, is whether plaintiff is entitled to recover under the aforementioned "Tucker Act" upon the theory that there was an implied contract of the Government to return the bonds, or the proceeds thereof, to the plaintiff.

The testimony of the witnesses establish the following facts:

George Holbert, father of plaintiff, purchased a farm in Dandridge, Tennessee, when plaintiff was three months of age and placed title to one-third of the farm in plaintiff, and title to the other two-thirds in the names of himself and wife. This farm was condemned by the Tennessee Valley Authority from which plaintiff received approximately $9,000 for his interest. The $9,000 was reinvested in another farm in Loudon County. The Loudon County farm was sold and the Chancery Court of Loudon County directed that the proceeds from such farm belonging to plaintiff be invested in "E" bonds. The Clerk and Master in due course purchased approximately $9,400 of "E" bonds for plaintiff and plaintiff's name appeared on all of these bonds as payee. The bonds were mailed by the Clerk and Master to George Holbert who kept them in his safe in Knoxville.

George Holbert owed over $10,000 income taxes to the Government. He brought up the question of the bonds with Mr. Nathan Jones of the Internal Revenue Service in Knoxville, but Mr. Jones was not asked for advice and did not give any advice about them. Mr. Jones went to the Bank of Knoxville with George Holbert and plaintiff and introduced George Holbert to Mr. Venable, a representative of the bank, who was handling the bonds. Mr. Jones then returned to his office in the Federal Building in Knoxville. Mr. Jones stated that the purpose in going to the bank was to get the bonds cashed. He stated however that he did not see either George Holbert or the plaintiff when they returned to the office and paid a part of the proceeds to Mr. Galyon, an Internal Revenue Agent, on George Holbert's in-

come taxes. The total amount George Holbert paid on his income taxes was $10,153.92. A payment was made on May 31, 1950 in the amount of $4,550, another was made on June 30, 1950 in the amount of $3,300, and the last payment was made on November 15, 1950 in the amount of $2,303.92.

Jones was not present when plaintiff endorsed the bonds. Jones did not have any knowledge of the bonds until George Holbert came into his office and told him about them. The Government did not levy on or seize any of George Holbert's property. Plaintiff was in the 7th or 8th grade when he signed the bonds. His father did not discuss his tax liability with him. His father gave him $50 from the proceeds of the bonds. He stated that he saw his father give money to Mr. Jones but he must be mistaken in this as Mr. Jones stated the money was paid to another agent. Plaintiff never had possession of his bonds. That $7,850 was paid out of the proceeds of plaintiff's bonds, is a reasonable inference from the testimony. That $2,303.92 which represented the last payment by Holbert on his income taxes and which was paid on November 16, 1950, was paid out of his own funds, is also a reasonable inference from the testimony.

■ In order for the Court to acquire jurisdiction of a suit based on implied contract under the Tucker Act, the prevailing view is that the contract must be implied in fact as distinguished from one implied in law. State of Alabama v. United States, 282 U.S. 502, 51 S.Ct. 225, 75 L.Ed. 492; United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911; Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816; Alliance Assurance Co. v. United States, D.C.N.Y., 146 F.Supp. 118; Hickman v. United States, D.C.La., 135 F.Supp. 919.

"An implied contract in order to give the Court of Claims or a district court under the Tucker Act jurisdiction to give judgment against the government must be one implied in fact and not one based merely on equitable consideration and implied in law. * * *" United States v. Minnesota Mutual Investment Co., supra, 271 U.S. at page 217, 46 S.Ct. at page 503.

"By repeated and unwavering decisions interpreting this Act, the Supreme Court has settled the law: '* * * The right * * * to sue the United States under the Tucker Act on a claim founded on contract * * * must rest upon the existence of a contract express or implied in fact, no right of action being given by the Act in cases where, if the transactions were between private parties, recovery could be had upon a contract implied in law.' Goodyear Tire & Rubber Co. v. United States, 276 U.S. 287, 48 S.Ct. 306, 307, 72 L.Ed. 575. To the same effect are State of Alabama v. United States, 282 U.S. 502, 51 S.Ct. 225, 75 L.Ed. 492; United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911; Merritt v. United States, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643; Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816; Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099; Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; Hill v. United States, 149 U.S. 593, 13 S.Ct. 1011, 37 L.Ed. 862." Hickman v. United States, supra, 135 F.Supp. at page 922.

■ An implied contract in fact is a contract made by the parties at the time of the transaction involved. A contract implied in law is a contract which the law creates for reasons of justice.

"It is well settled that although the Tucker Act confers original jurisdiction upon a federal district court to entertain suits against the government based on express or implied in fact contracts, said Act does not give federal district courts jurisdiction over actions founded on equitable considerations and implied in law. * * *

"The distinguishing feature of a contract implied in law is that it is not based on the apparent intention of the parties to undertake the performance in question, nor is it a promise. The obligations flowing from a contract implied in law are created by law for reasons of justice without reference to the intentions of the parties. Such contracts are not really contracts at all since they do not arise from mutual agreement and intent to promise. They have been termed 'quasi contracts' in order to avoid confusion with the other classes of contracts. The distinction between a contract implied in fact and a quasi contract was clearly expressed in Miller v. Schloss, 218 N.Y. 400, 113 N.E. 337, as follows:

" ' * * * The courts recognize by the language of their opinions two classes of implied contracts. The one class consists of those contracts which are evidenced by the acts of the parties and not by their verbal or written words—true contracts which rest upon an implied promise in fact. The second class consists of contracts implied by the law where none in fact exist—quasi or constructive contracts created by law and not by the intentions of the parties. A contract cannot be implied in fact where the facts are inconsistent with its existence, or against the declaration of the party to be charged, or where there is an express contract covering the subject-matter involved, or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary, and, unless he has conducted himself in such a manner that his assent may fairly be inferred, he has not contracted. * * *

" ' * * * A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth, it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which ex aequo et bono belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy. * * *' 218 N.Y. at pages 406–407, 113 N.E. at page 338." Alliance Assurance Co., v. United States, supra, 146 F.Supp. at page 121. See also, Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 394, 59 S.Ct. 516, 83 L.Ed. 784.

In the case at bar the payments of money to the Internal Revenue Collector, which payments plaintiff seeks to recover, were made to pay a tax debt of plaintiff's father. So far as the facts disclose, there was no dispute as to the liability of plaintiff's father for these taxes. It cannot be assumed that when an agent of the United States Government accepted these monies in discharge of the tax obligation, an implied contract arose that these monies would be returned to the plaintiff. Such an assumption is in direct contradiction to the factual situation existing at the time the monies were received. See, Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56. It is our considered opinion that there was no contract implied in fact to return these bonds. The most favorable view of the facts from plaintiff's standpoint is that the law created an implied contract to return the money because the son was not of legal age and could not make a binding contract even though the son desired to favor the father by agreeing to turn over the proceeds of the bonds to apply on the father's taxes. Such a contract would be implied in law and, under the decisions of the Supreme

Court, the Tucker Act does not provide a remedy for contracts implied in law.

Plaintiff has cited a number of cases in which recoveries have been allowed of monies which came into the hands of the Government.

In Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083, the Secretary of War requested a pier for use in carrying on the war. The plaintiff sued to recover an amount sufficient to provide just compensation for its use. The Supreme Court held that when, pursuant to an Act of Congress, property is taken for public use by agents of the Government, the Government is under an implied obligation to make just compensation. This claim is clearly one arising out of a contract implied in fact.

In United States v. State Nat. Bank, 96 U.S. 30, 24 L.Ed. 647, an agent of the Government practiced a fraud upon the plaintiff. The Court held that the Government could not profit by the fraud of its agent. The principle declared in this case is not controlling in the case at bar, since there is no claim of fraud on the part of the Internal Revenue agent.

In Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751, suit was brought by certain Indians against a county in Oklahoma to recover monies coercively collected as taxes. The suit was based upon a special Act of Congress, under which the State of Oklahoma was created, which Act gave certain exemptions to Indians under Federal law and treaties. The suit was not brought under the Tucker Act and involved an appeal from the Supreme Court of the State of Oklahoma.

Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, involved the construction of an estate tax statute. The Government had, through a palpable mistake, obtained more money from the estate than it was entitled to, having included in the estate items of income. The taxpayer failed to institute a suit for refund within the period fixed by the statute of limitations. The Government sought to recover an additional item of income tax in a new proceeding arising out of the same transaction. The Supreme Court in reversing the Court of Claims permitted a recoupment of the amount mistakenly collected as estate tax. The case is authority only for the principle that recovery might be had by way of recoupment. The case is not authority that an erroneous payment may be recovered in a direct suit under the Tucker Act.

In Sultzbach Clothing Co. v. United States, D.C., 10 F.2d 363, plaintiff was fined for a violation of Section 4 of the Lever Act following which the plaintiff paid $6,000 to the United States Marshal to apply on the penalty. Subsequently, the Supreme Court held Section 4 unconstitutional and this action was brought under Section 24, subdivision 20 of the Judicial Code, a reenactment of the Tucker Act, to recover the amount paid. The Court stated that the basis of the suit was that the plaintiff had been deprived of his property without due process of law and that a quasi obligation existed by which the Government obligated itself to pay illegally the imposed fine.

In our opinion the District Court misapprehended constructions placed upon the Tucker Act in authorities relied on by plaintiff and the decision is contrary to the clear construction placed on that Act by the United States Supreme Court and cannot be considered by this Court as authority for the relief sought.

Recovery was had in Stuart v. Chinese Chamber of Commerce of Phoenix, 9 Cir., 168 F.2d 709. In that case United States narcotics agents arrested and searched the premises of Ung-Too-Thet, known as "Thet." The agents found $32,000 in cash and checks which were taken as evidence by them and seized by the Collector of Internal Revenue for unpaid income taxes by Thet. Thereafter the appellees laid claim to the monies claiming that they, and not Thet, were the owners thereof. The District Court entered a judgment against the Collector of Internal Revenue for the amount claimed. The Court of Appeals in affirming the recovery said that the effect of the court's

order was merely to resolve all claims to the property under distraint. The recovery involved proceedings under a section of the Revenue Code, 26 U.S.C.A. § 3772, and did not involve the Tucker Act.

The final case cited is that of Forest of Dean Iron Ore Co. v. United States, 65 F.Supp. 585, 106 Ct.Cl. 250. (Court of Claims case May 6, 1946). This case involved the claim for waste piles of crushed rock on land that was condemned by the Government. The Government condemned the realty which did not include rock in the condemnation proceeding. The Court held that the Government impliedly agreed to pay for the rock.

In summation the Court holds that the Government did not agree expressly or impliedly to return the bonds or the proceeds of these bonds that are the subject of this suit and that the Court is without authority under the Tucker Act to render a decision for the plaintiff.

Let an order be prepared in conformity with the views here expressed.